(Nos. 48399, 48611 cons.—

RICHARD B. WILLIAMS *et al.*, Appellees, v. THE CITY OF CHICAGO *et al.*, Appellants.—PATRICK E. GORMAN *et al.*, Appellees, v. THE CITY OF CHICAGO *et al.*, Appellants.

*Opinion filed March 23, 1977.—Rehearing denied May 26, 1977.*

424

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Richard F. Friedman, Assistant Corporation Counsel, of counsel), for appellants.

Freeman, Freeman and Atkins, Ltd., of Chicago (Robert F. Coleman, Barry J. Freeman, Robert S. Atkins, and Howard L. Fink, of counsel), for appellees.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Richard F. Friedman, Assistant Corporation Counsel, of counsel), for appellants.

Asher, Greenfield, Goodstein, Pavalon & Segall, Ltd., of Chicago (Eugene I. Pavalon, Peter B. Carey, and Joseph J. Butler, Jr., of counsel), for appellees.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

These consolidated appeals are concerned with the constitutionality of the Chicago Transaction Tax Ordinance, which imposes a tax on transactions consummated in the city of Chicago involving the transfer of real estate and the lease or rental of certain types of personal property. (Municipal Code of Chicago, ch. 200.1.) The plaintiffs brought separate class actions in the circuit court of Cook County for a declaratory judgment and injunctive relief

against defendants, the city of Chicago and its Director of Revenue, challenging the constitutionality of the ordinance on various grounds. Cause No. 48399 involves a suit filed by plaintiffs Richard B. Williams and Pearl Johnson attacking those portions of the ordinance dealing with the tax on the lease or rental of personal property. The trial court denied the defendants' motion to dismiss the complaint, and on interlocutory appeal the appellate court held the tax ordinance invalid on the grounds that it created an unconstitutional classification in defining the types of personal property transactions subject to the tax. (*Williams v. City of Chicago* (1976), 36 Ill. App. 3d 216.) We allowed defendants' petition for leave to appeal. In cause No. 48611, plaintiffs Patrick E. Gorman and Dorothy Gorman brought suit challenging those provisions of the ordinance relating to the tax on real estate transfers. The trial court allowed plaintiffs' motion for summary judgment and entered an order declaring the ordinance unconstitutional as applied to transfers of real property on the grounds that it arbitrarily taxed nonresidents of the city at a lower rate than residents and was vague as to the circumstances which would make the lower tax rate applicable. The court enjoined the city from further collecting the tax on real estate transfers or from disbursing taxes already collected except into a segregated fund. The court further determined that those who had paid the tax constituted a class of persons entitled to a refund of the taxes they had paid. The defendants filed notice of appeal, and we allowed plaintiffs' motion for direct appeal to this court pursuant to Supreme Court Rule 302(b) (58 Ill. 2d R. 302(b)) and for consolidation with the appeal in *Williams*.

The Chicago Transaction Tax Ordinance was enacted by the city of Chicago pursuant to its home rule powers under the 1970 State Constitution. It imposes a tax based on the dollar amount of all transactions consummated in the city of Chicago after January 1, 1974, involving the

transfer of title to real property situated within the city and the lease or rental of specified items of personal property. Transactions made by nonresidents of the city are taxed at lower rates than transactions made by residents. Commencing January 1, 1974, the rate applicable to nonresidents is 95% of the tax rate applied to residents. The nonresident rate decreases each year on a sliding scale until January 1, 1978, when it reaches a permanent level of 50% of the rate paid by residents. The ordinance specifies that the "ultimate incidence of and liability for payment of said tax shall be borne by" the lessee of personal property or the grantee or purchaser of real property, respectively. However, the lessor or grantor has the duty of collecting the tax and remitting it to the city. In cases where taxes "have been paid in error" to the city, a procedure is set forth for credits and refunds to persons who have collected and remitted the tax. However, there are no provisions authorizing lessees or grantees who bear the burden of the tax to file claims for refunds or pay taxes under protest.

In view of the conclusions reached by the appellate court concerning the classifications of personal property set forth in the ordinance, it is appropriate to examine those provisions in some detail. Section 200.1—2 provides in pertinent part:

> "200.1—2. There is hereby imposed and shall immediately accrue and be collected a tax, as herein provided, on all transactions designated herein, including sales, agreements of sale, agreements to sell, memoranda of sales, deliveries or transfers of the objects of such sales, agreements, or memoranda, leases and lease or rental agreements and memoranda, as follows:
>
>> A. Transactions consummated in the City of Chicago involving the lease or rental of any personal property, valued in money, *** made after the 1st day of January, 1974 ***."

Section 200.1—2(A) contains 5 subsections. Subsection 1 specifies the tax rate; subsection 2 provides that the

incidence of tax and liability for its payment shall be borne by the lessee but that the person making or effectuating the lease or rental has the duty to pay the tax to the city; subsection 3 provides for payment of the tax through purchase of tax stamps, subsection 4 specifies that lease or rental agreements must contain certain information including an identifying number; and subsection 5 defines the personal property subject to the tax as follows:

"5 (a) As used in paragraph 200.1—2A, personal property means motor and other vehicles, which shall include but are not limited to automobiles, automobile trailers, bicycles, motor driven bicycles, motorcycles, buses, trucks, truck tractors, truck trailers, construction and demolition equipment, which shall include but is not limited to ditch digging equipment, well boring apparatus, road construction and maintenance equipment such as spreaders, mixers, loaders, graders, rollers, scarifiers, scrapers, earth movers, power shovels, cranes, compressors, concrete mixers, garden and landscaping equipment, ladders, floor machines, searchlights, floodlights, hand and electrical tools, spraying equipment, and scaffolding; household and office equipment, which shall include but is not limited to carpets and rugs, chairs and tables, chinaware and glassware, furniture, beds, television and radio, washing machines, dryers and ironers, water softening equipment; clothing, including but not limited to formal wear and other types of clothing; office and computing equipment, including but not limited to data processing equipment, computers, accounting and bookkeeping machines, adding and calculating machines, typewriters, addressing machines, dictating machines, duplicating machines, mailing machines, copy machines; and such miscellaneous equipment as musical instruments.

(b) As used in paragraph 200.1—2A, personal property shall also mean leased time on equipment not otherwise itself rented, such as leased time for use of calculators, computers, data processing equipment, tabulating equipment, accounting equipment, copying machines, duplicating machines, addressing machines, whether said lease time is fully or partially utilized."

The Williams complaint alleged that the plaintiffs were

residents of the city of Chicago and on various occasions since January 1, 1974, had been charged and had paid the Chicago transaction tax when they leased automobiles under written lease agreements executed in the city of Chicago. They asserted the propriety of the suit as a class action and alleged that the Chicago transaction tax violated the due process and equal protection clauses of the State and Federal constitutions; that the ordinance contained an unreasonable, arbitrary and discriminatory classification in that "the definition of the types and categories of personal property subject to the tax as set forth in Section 200.1—2(A)(5)(a), (b) fails to include many types, categories and articles of personal property, which are thereby exempt from taxation, including but not limited to such personal property as printing equipment, signs, ice making machines, burglar alarms, telephone equipment, industrial equipment and industrial machinery"; that the provisions of the ordinance requiring the city of Chicago residents to pay a greater tax than the tax imposed on nonresidents of the city of Chicago are discriminatory, arbitrary and unreasonable; that lessees of personal property cannot determine with reasonable assurance what transactions involving the lease or rental of personal property are subject to taxation since the terms used in the ordinance such as "transactions consummated in the City of Chicago," are vague, unclear and ambiguous; that lessors of personal property continue to collect the tax from plaintiffs and the members of the class which they represent and remit the tax to the defendant Director of Revenue for the city of Chicago; and that "[p]laintiffs have no remedy except by this action for injunctive relief to prevent the continuing irreparable injury currently being sustained by plaintiffs and members of the class." Plaintiffs prayed, *inter alia,* that the court declare the ordinance unconstitutional and void; that pending the trial of the action and until further order of court the defendant Director of Revenue for the city of Chicago be

directed to hold the proceeds of the Chicago transaction tax in a separate fund and not distribute such taxes to the city of Chicago; that after trial of the action the court order in its final decree that the proceeds so held by the defendants be refunded to the persons who show proper proof that they have paid the tax and direct that the balance, less plaintiffs' costs, expenses and attorneys' fees, be paid to the city of Chicago; and that defendants and their successors in interest be permanently enjoined in the final decree from collecting the Chicago transaction tax from and after the date of final decree.

The court allowed plaintiffs' motion for preliminary injunction enjoining the defendants from disbursing any moneys received from the collection of the Chicago transaction tax on the lease or rental of personal property except into a segregated fund to be maintained until further order of court. The defendants' motion to strike and dismiss the complaint on the grounds that the plaintiffs had no standing and had not alleged sufficient facts establishing the invalidity of the ordinance was denied, and it was from this order that the defendants brought an interlocutory appeal to the appellate court.

In the Gorman case the plaintiffs alleged that they were residents of the city of Chicago and on September 30, 1974, had purchased real property situated in Chicago as to which they had paid a tax in the amount of $50 as required by the Chicago Transaction Tax Ordinance. After asserting grounds for bringing a class action, the complaint alleged as to the tax on real estate transactions virtually the same infirmities as were alleged in the Williams case regarding the tax on personal property transactions; the prayers for relief were nearly identical.

The defendants' motion to strike and dismiss the complaint for lack of standing and failure to allege facts establishing the invalidity of the ordinance was also denied in this case, and the trial court allowed plaintiffs' motion for issuance of a preliminary injunction similar to that in

the Williams case. The defendants subsequently filed their answer denying the material allegations of the complaint. The plaintiffs then filed a motion for summary judgment supported by an affidavit of Patrick E. Gorman which stated that at all pertinent times he and his wife Dorothy were residents of the city of Chicago; that they had purchased real property at 3180 North Lake Shore Drive in Chicago; and that in connection with the purchase of said real estate he and his wife had paid the Chicago transaction tax in the amount of $50 in accordance with the terms of the ordinance. The trial court allowed the motion and found that plaintiffs had standing to bring the action individually and as representatives of a class consisting of all purchasers or grantees of real property located within the city of Chicago who had paid or who had become liable for payment of the tax pursuant to provisions of the ordinance beginning January 1, 1974, and thereafter; that the Chicago Department of Revenue processes 40,000 real estate transaction tax declarations annually; that plaintiffs' claim was typical and representative of the class they sought to represent; "that the provisions of the said Ordinance providing for the transaction tax are vague and lacking specificity as to the circumstances which would make the lower tax rate applicable and as to when a transaction is 'consummated in the City of Chicago' for purposes of the said ordinance"; "that the classification contained in the ordinance of persons and property to be taxed is arbitrary and without a rational basis"; and "that an injunction enjoining the defendants from enforcing the provisions of the said transaction tax ordinance is the only adequate remedy available to the plaintiffs and the class which they represent." The court enjoined the defendants from enforcing the provisions of the transaction tax as it applied to transfers of title to real property located within the city but stayed its enforcement pending appeal. However, the court continued in effect its previous injunction enjoining

defendants from disbursing any moneys received from the collection of the real estate transfer tax except into the segregated fund. The court further found that the plaintiffs and the members of the class they represent were entitled to repayment of the taxes paid on real estate transfers pursuant to the provisions of the ordinance in question and that the mechanism for such repayment would be subject to further order of the court at the conclusion of any appeal.

The principal thrust of plaintiffs' attack on the constitutionality of the ordinance is that the provisions defining the types of personal property subject to the tax and the provisions establishing a lower tax rate applicable to transactions involving nonresidents create unreasonable and discriminatory classifications. They argue that such classifications are devoid of any rational basis and bear no relationship to the object of the tax.

It is well established that legislative bodies have very broad powers in establishing classifications defining the objects of taxation which will withstand constitutional attack so long as the classifications are reasonable. (*Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 35 L. Ed. 2d 351, 93 S. Ct. 1001; *Titus v. Texas Co.* (1973), 55 Ill. 2d 437; *Fiorito v. Jones* (1968), 39 Ill. 2d 531; *Klein v. Hulman* (1966), 34 Ill. 2d 343; *People ex rel. Holland Coal Co. v. Isaacs* (1961), 22 Ill. 2d 477; see also Ill. Const. 1970, art. IX, sec. 2.) The legislative determination as to those persons who are to be taxed and those not taxed must not be arbitrary (*City of Chicago v. Ames* (1937), 365 Ill. 529), and the classification must bear some reasonable relationship to the object of the legislation (*Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55). However, it is equally well settled that there is a presumption favoring the validity of classifications made by legislative bodies in taxing matters and that one who attacks them has the burden of proving such classifications to be arbitrary and unreasonable. (*Jacobs v. City of*

*Chicago* (1973), 53 Ill. 2d 421; *Thorpe v. Mahin* (1969), 43 Ill. 2d 36; *Grenier & Co., Inc. v. Stevenson* (1969), 42 Ill. 2d 289; *Doolin v. Korshak* (1968), 39 Ill. 2d 521.) As was stated in *Department of Revenue v. Warren Petroleum Corp.* (1954), 2 Ill. 2d 483, 490: "The reasons justifying the classification, moreover, need not appear on the face of the statute, and the classification must be upheld if any state of facts reasonably can be conceived that would sustain it. [Citations.] The burden therefore rests on one who assails the statute to negate the existence of such facts." In the *Lake Shore Auto Parts Co.* case cited above, the United States Supreme Court similarly stated: "There is a presumption of constitutionality which can be overcome 'only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes.' [Citation.] *** 'The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.' [Citation.]" 410 U.S. 356, 364, 35 L. Ed. 2d 351, 358, 93 S. Ct. 1001, 1006.

In support of their argument that the ordinance contains an unreasonable and discriminatory classification of personal property transactions subject to tax, the plaintiffs in the Williams case rely upon what they consider to be a constitutional infirmity arising from the definition of the term "personal property" found in subsection 5 of section 200.1—2(A). They point out that section 200.1—2(A) speaks in terms of a tax being imposed upon transactions involving the lease or rental of "any personal property" but that subsection 5 defines the term "personal property" as including only those items of tangible personal property listed in that subsection. They argue that this definition for no discernible reason omits numerous items of personal property and that such omission is inconsistent with the clearly expressed intention of the framers of the ordinance to impose the tax on transactions involving the lease or rental of "any" personal

property. They urge that this alleged inconsistency creates an irrational and unconstitutional classification which bears no reasonable relationship to the object of the tax and renders the ordinance void. The appellate court concurred with this view when it concluded:

"It appears to us that the City, for some unknown reason, failed to insert the words 'but shall not be limited to' immediately following the words 'personal property means' in the section 200.1—2[A](5)(a) definition of 'personal property.' However, the tax ordinance does not so read, and as it stands we can perceive no rational basis to justify the imposition of the tax upon the lease or rental of construction, demolition, household and office equipment where the tax is not imposed upon the lease or rental of many other items; *e.g.,* printing, telephone and industrial equipment and machinery. We can only conclude that the distinction between the class of those items of personal property which are subject to the tax and those not included is not one based upon any real and substantial difference. [Citations.] Accordingly, we hold the tax ordinance to be invalid." 36 Ill. App. 3d 216, 222-23.

In our opinion, the foregoing construction assigns exaggerated and undue significance to the word "any" appearing in section 200.1—2(A) and tends to ignore, what seems to us, the plain intent of subsection 5 to define the term "personal property" as used in the ordinance. Viewed in its entirety the ordinance, in our judgment, does not express an intention to tax lease or rental transactions involving any and all personal property; instead, it has as its objective the taxation of transactions involving the lease or rental of those types of personal property defined in subsection 5. We find no inconsistency or ambiguity in these provisions and do not concur with the argument that the definition contained in subsection 5 is somehow contrary to the intent and object of the tax or that it

reflects a mistaken or irrational omission which creates an unreasonable and arbitrary classification of transactions subject to tax.

Furthermore, we are of the opinion that neither the provisions of the ordinance taxing transactions involving the lease or rental of specified types of personal property nor those provisions which apply lower tax rates to transactions involving nonresidents are otherwise patently arbitrary or unreasonable. As we have noted earlier in this opinion, it was not necessary for the ordinance to explain on its face the reasons for classifying the objects of taxation or establishing a lower tax rate for nonresidents. Considerations of administrative convenience and expense of collection may have been involved. (*Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553; *Titus v. Texas Co.* (1973), 55 Ill. 2d 437; *Department of Revenue v. Warren Petroleum Corp.* (1954), 2 Ill. 2d 483; *People v. Deep Rock Oil Corp.* (1931), 343 Ill. 388.) It is conceivable that the city council may have determined it would be impractical to impose a tax on all leases or rentals of personal property, some of which might occur infrequently or be difficult and unduly expensive to administer. Or, it may have been thought that the tax would be unduly burdensome when applied to certain types of leasing transactions in view of the particular nature of the property or transaction involved or due to the existence of other forms of taxation or regulation which affect such property or transactions. The provisions of the ordinance applying a lower tax rate to real estate transactions involving nonresidents could reflect a determination by the city council that nonresidents make less use of city services than do residents and for that reason should be taxed at a reduced rate. These considerations furnish a sufficient justification for the classifications in question, and in our opinion the complaints in both cases failed to allege a sufficient factual basis to overcome the presumptive constitutionality of the ordinance.

Plaintiffs also argue that the ordinance is so vague,

unclear and ambiguous that its application to various types of transactions is unreasonably indefinite, doubtful and uncertain, thereby precluding its interpretation and enforcement in a fair, nondiscriminatory and nonarbitrary manner. We do not agree. As was stated in *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 580: "In this ordinance, as in many ordinances and statutes, the provisions contain general language, and the variety of interpretations suggested is limited only by the ingenuity of counsel who attack them. This case is before us on the pleadings in declaratory judgment actions, and upon examination of the ordinance we conclude that there is no basis to anticipate that application of the provisions here attacked will present any undue difficulty. Should a set of facts present itself under which enforcement of the ordinance results in a deprivation of equal protection or due process, the matter can be adjudicated at that time. Meanwhile as we said in *Mahin v. Baltis,* 34 Ill. 2d 413, 'Factual and legal issues that may thereafter arise are not now present for decision.' 34 Ill. 2d 413, at 421." We do not find the ordinance to be unconstitutionally vague or uncertain on its face and are of the opinion that the factual allegations of both complaints were insufficient to support a finding of unconstitutionality on these grounds.

For the above reasons, we hold that the trial court in each case erred in not granting the defendants' motion to dismiss the complaint. Accordingly, the additional questions raised on this appeal with respect to plaintiffs' standing to bring a class action challenging the constitutionality of the ordinance and seeking a refund of taxes paid become academic and need not be considered.

The judgment of the appellate court in cause No. 48399 and that of the trial court in cause No. 48611 are reversed. Each cause is remanded to the trial court with directions to enter an order granting defendants' motion to dismiss the complaint and for such further proceedings consistent with this opinion as may be appropriate.

*Reversed and remanded.*