NORTH SHEFFIELD, INC., *et al.*, Plaintiffs-Appellees, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (5th Division)   No. 85—1650

Opinion filed May 30, 1986.

James D. Montgomery, Corporation Counsel, of Chicago (Mary K. Rochford and Ruth M. Moscovitch, Assistant Corporation Counsel, of counsel), for appellant city of Chicago.

Morton Siegel, Michael A. Moses, Richard G. Schoenstadt and James L. Webster, all of Siegel, Moses & Schoenstadt, of Chicago, for appellee North Sheffield, Inc.

George W. Keeley, of Halfpenny, Hahn & Roche, of Chicago (Halfpenny, Hahn & Roche, of counsel), for intervenors Illinois Retail Liquor Association, *et al.*

Lawrence J. Suffredin, Jr., of Simon & Spitalli, of Chicago (Simon & Spitalli, of counsel), for intervenors Illinois Restaurant Association, *et al.*

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This appeal is from an order declaring the Chicago Alcoholic Beverage Tax Ordinance (Chicago Municipal Code sec. 200.5 *et seq.* (1984)), unconstitutional and enjoining its enforcement.

On December 31, 1984, pursuant to the home rule powers conferred by section 6(a) of article VII of the 1970 Illinois Constitution (Ill. Const. 1970, art. VII, sec. 6(a)), the Chicago city council enacted chapter 200.5 of the Municipal Code, entitled the Chicago Alcoholic Beverage Tax Ordinance. The ordinance imposes a tax upon "the purchase of alcoholic beverages for immediate consumption from an alcoholic beverage dealer" (Chicago Municipal Code sec. 200.5—2(A) (1984)), defined as "any person who engages in the business of selling alcoholic beverages in the City of Chicago to a purchaser for immediate consumption" (Chicago Municipal Code sec. 200.5—1). The term "immediate consumption" applies to "purchases of alcoholic beverages (1) in open containers, (2) in any container or form that is not its original package, or (3) from establishments which provide for, allow, or have facilities for the consumption of alcoholic beverages on its premises, except for those sales of alcoholic beverages for consumption off the premises of the establishment and actually consumed off such premises." (Chicago Municipal Code sec. 200.5—1.) The amount of the tax is computed on the number of ounces of alcohol contained in a given beverage, ranging from one-half cent per ounce on beer to five cents per ounce on distilled alcohol (Chicago Municipal Code secs. 200.5—2(A)(1) through (A)(4)), fractions of which are to be rounded off to the nearest cent. The ordinance further states that "the ultimate incidence of and liability for payment of the tax *** is to be borne by the purchaser" (Chicago Municipal Code sec. 200.5—2(B)), and that "nothing [in the ordinance] shall be construed to impose a tax upon the occupation of alcoholic beverage dealers" (Chicago Municipal Code

sec. 200.5—2(A)). Responsibility for collection and remittance of the tax is on the alcoholic-beverage dealer who is also obliged to register with the Department of Revenue of the city within a prescribed time (Chicago Municipal Code sec. 200.5—4(A)), and maintain records—which are subject to inspection by the Director of Revenue—of all sales of alcoholic beverages (Chicago Municipal Code sec. 200.5—4(B)). Each sale is presumed subject to the tax absent proof by the dealer establishing the contrary. (Chicago Municipal Code sec. 200.5—4(C).) Thus, if an alcoholic-beverage dealer sells such beverages both for immediate consumption and not for immediate consumption he is required to segregate those sales when they are made and keep accurate records thereof. (Chicago Municipal Code sec. 200.5—4(C).) The ordinance prescribes certain penalties for violations of it by any person (Chicago Municipal Code sec. 200.5—6(A)), authorizes the corporation counsel, upon request of the Department of Revenue, to bring an action to enforce the payment of the tax (Chicago Municipal Code sec. 200.5—6(B)), and gives the mayor the power to "suspend or revoke all city licenses held by [such person]" (Chicago Municipal Code sec. 200.5—6(C)). Finally, the ordinance provides that any tax collected or required to be collected by an alcoholic-beverage dealer shall constitute a debt owed by the dealer to the city. Chicago Municipal Code sec. 200.5—12.

On January 18, 1985, the effective date of the ordinance, the original plaintiffs, who include numerous restaurant and tavern owners selling liquor at retail for on-premises consumption in the city of Chicago and individual consumers of such beverages, filed a verified complaint seeking a declaration that the ordinance was unconstitutional and an injunction prohibiting its imposition and enforcement. The complaint alleged, in substance, that the ordinance (a) is unrelated to the government and affairs of the city; (b) is an occupation tax which the city lacks the power to enact without express authorization from the General Assembly (Ill. Const. 1970, art. VII, sec. 6(e)); and (c) denies due process and equal protection and violates the uniformity of taxation provision of the Illinois Constitution (Ill. Const. 1970, art. IX, sec. 2).

The trial court entered an agreed order temporarily restraining the city from enforcing the tax, allowed certain trade associations of the restaurant, hotel and retail liquor industries leave to intervene as plaintiffs, and subsequently issued a preliminary injunction staying the effective date of the ordinance pending the outcome of a hearing on its validity. On April 1, 1985, defendants filed a motion to strike and dismiss plaintiffs' complaints in lieu of an answer thereto. A hear-

ing was held on May 13, 1985, after which the trial court denied defendants' motion and, upon the request of all counsel for a ruling on the validity of the ordinance, declared it unconstitutional, void and unenforceable. This appeal followed.

OPINION

Since the trial court did not state the basis for its ruling, defendants' arguments in support of their general contention that the ordinance is valid are, essentially, in the form of responses to the allegations made and argued by plaintiffs in the trial court, the first of which we will consider is that the ordinance creates arbitrary and unreasonable classifications in defining the persons and transactions subject to the tax and thereby constitutes a denial of due process and equal protection and a violation of the uniformity provision of the Illinois Constitution which requires that (1) legislative classifications defining the subjects of the tax be reasonable and (2) the tax be uniform within the class upon which it operates. Ill. Const. 1970, art. IX, sec. 2.

It is well settled that article VII, section 6(a), of the 1970 Illinois Constitution (Ill. Const. 1970, art. VII, sec. 6(a)), gives home rule units broad power in matters pertaining to local taxation (*Chicago Park District v. City of Chicago* (1986), 111 Ill. 2d 7, 488 N.E.2d 968; *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 338 N.E.2d 6; *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 317 N.E.2d 3; *S. Bloom, Inc. v. Korshak* (1972), 52 Ill. 2d 56, 284 N.E.2d 287), and that because there is a presumption favoring the validity of legislatively created classifications defining the subjects of taxation, the burden of proving them invalid is on the party challenging them (*Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 362 N.E.2d 1030, *cert. denied* (1977), 434 U.S. 924, 54 L. Ed. 2d 282, 98 S. Ct. 402; *Illinois Gas Dealers Association v. City of Chicago* (1986), 141 Ill. App. 3d 976, 491 N.E.2d 112). In defining the subjects of taxation, a legislative body may define a general class and expressly exclude a subclass or merely specify a subclass without naming the general class. (*Fiorito v. Jones* (1968), 39 Ill. 2d 531, 236 N.E.2d 698.) However, irrespective of the manner in which the classes are defined, the classifications themselves must be based upon real and substantial differences of condition or situation between those subject to the tax and those excluded which bear some reasonable relationship to the purpose of the legislation. (*Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 432 N.E.2d 227; *People ex rel. City of Salem v. McMackin* (1972), 53 Ill. 2d 347, 291 N.E.2d 807; *People ex rel. Hol-*

*land Coal Co. v. Isaacs* (1961), 22 Ill. 2d 477, 176 N.E.2d 889; *Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55, 108 N.E.2d 8.) Decisions have held the constitutional mandate of uniformity to have been violated where the ordinance included within a class those in fact not within it or excluded those properly belonging to it. *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 432 N.E.2d 227; *Fiorito v. Jones* (1968), 39 Ill. 2d 531, 236 N.E.2d 698; *People ex rel. Holland Coal Co. v. Isaacs* (1961), 22 Ill. 2d 477, 176 N.E.2d 889; *Ohio Oil Co. v. Wright* (1944), 386 Ill. 206, 53 N.E.2d 966; *City of Chicago v. Ames* (1937), 365 Ill. 529, 7 N.E.2d 294; *Winter v. Barrett* (1933), 352 Ill. 441, 186 N.E.2d 113.

Here, plaintiffs assert that there is no rational basis for imposing a tax upon those who purchase an alcoholic beverage for immediate consumption on the premises of the seller where no such tax is imposed on purchases of substantially identical beverages for off-premises consumption and that such classification is arbitrary, discriminatory and bears no reasonable relationship to the purpose of the ordinance. In support thereof, plaintiffs analogize the tax at issue to those found invalid in *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 432 N.E.2d 227, *Fiorito v. Jones* (1968), 39 Ill. 2d 531, 236 N.E.2d 698, and *Winter v. Barrett* (1933), 352 Ill. 441, 186 N.E.2d 113, for lack of uniformity in classifying the subjects of taxation.

In *Commercial National Bank*, plaintiffs challenged, on numerous grounds, the Chicago Service Tax Ordinance which imposed a 1% tax on purchases of service in the city but exempted from taxation services provided by commodities and securities businesses. The ordinance was held invalid both as an unauthorized occupation tax and as violative of the uniformity provision. With respect to uniformity, the court noted that the exempted businesses provided many of the same services provided by certain of the nonexempt businesses, *e.g.*, banks, and thus, to some extent were in competition with them. The court stated:

> "There is no apparent reason why a tax should be imposed upon those who purchase services from some of the plaintiffs while no tax is imposed upon those who purchase the same services from the exempt businesses. There does not appear to be any real or substantial difference between those taxed and those not taxed which bears a reasonable relationship to the revenue gathering purpose of the tax. [Citation.] All businesses providing services in Chicago share the benefits of the tax, but not all share the burden. The distinction is wholly arbitrary and

cannot be upheld." *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 73, 432 N.E.2d 227, 240.

Similarly, in *Fiorito v. Jones* (1968), 39 Ill. 2d 531, 236 N.E.2d 698, cited by *Commercial National Bank*, it was held that certain amendments to the service occupation tax which limited its application to four subclassifications of servicemen rendered the Act unconstitutional for lack of uniformity and denial of due process and equal protection where the court could discern no real or substantial difference between the four classes of servicemen specifically subjected to the tax and those impliedly excluded from it.

In *Winter v. Barrett* (1933), 352 Ill. 441, 186 N.E.2d 113, also discussed in *Commercial National Bank*, the court considered the constitutionality of the 1933 Sales Tax Act which imposed a tax on the retail sale of "all tangible personal property" but exempted from that definition any produce or other farm products sold by farmers directly to the consumer. Observing first that farm produce is by its very nature tangible personal property, that the legislature "has no power to declare that not to be a fact which everyone knows is a fact," and that clearly the sole purpose of the disputed provision was to exclude farmers from the Act, the court then turned to the question whether such exemption constituted an unreasonable classification which violated the requirement of uniformity in taxation and denied equal protection to nonexempt produce retailers. Holding that it did, the court noted that farmers who sold produce at retail were in direct competition with nonfarmers selling identical products and stated that it could find no valid basis in fact for discriminating in the farmers' favor or excluding them from a class into which they naturally fell.

■ It is plaintiffs' position that the ordinance before us suffers the same constitutional infirmities in its classifications as those in the cases discussed above and, therefore, cannot be upheld. We agree.

First, as in *Commercial National Bank* and *Winter*, the commodity which is the subject of the tax, *i.e.*, the alcohol contained in beverages for immediate, on-premises consumption, is identical to the alcohol contained in beverages which if purchased for consumption elsewhere is exempt from taxation. Further, there are no real or substantial differences between those who purchase an alcoholic beverage for consumption on the premises of the licensed retailer and those who purchase the same beverage for off-premises consumption which would justify excluding the latter group from taxation.

This lack of substantive distinction is more clearly seen in the light of the following hypothetical situation. Assuming, for instance, that an individual stops at a neighborhood tavern to purchase a six-

pack of beer to take out and, while there, also decides to purchase a 12-ounce bottle of beer to drink at the bar. Under the provisions of the ordinance before us, when he receives his total bill, he will be charged no tax for the six cans of beer but will be required to pay 6 cents tax for the bottle of beer. Thus, it cannot be said that it is the nature of the commodity or the identity of the purchaser which serves as the basis for the classifications in question. Rather, it appears that it is *where* the commodity is to be consumed *after* the purchase which determines whether the purchase itself will be a taxable event. In our view, this is an arbitrary distinction which bears no reasonable relationship to the revenue-raising purpose of the ordinance. *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 432 N.E.2d 227; *Winter v. Barrett* (1933), 352 Ill. 441, 186 N.E.2d 113; *Ohio Oil Co. v. Wright* (1944), 386 Ill. 206, 53 N.E.2d 966; *City of Chicago v. Ames* (1937), 365 Ill. 529, 7 N.E.2d 294.

We are not persuaded otherwise by defendants' argument that the classifications created by this ordinance are no more disparate than those found to be reasonable in *Kerasotes Rialto Theatre Corp. v. City of Peoria* (1979), 77 Ill. 2d 491, 397 N.E.2d 790, *Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 362 N.E.2d 1030, *Jacobs v. City of Chicago* (1973), 53 Ill. 2d 421, 292 N.E.2d 401, and *People ex rel. Holland Coal Co. v. Isaacs* (1961), 22 Ill. 2d 477, 176 N.E.2d 889.

Initially, we note that *Kerasotes* and *Holland Coal* involved tax laws from which sales by governmental agencies and charitable and religious organizations were exempted. In each case, the court upheld the exemptions as to the nonprofit groups, noting that while the ultimate incidence of the tax was on the purchaser, the exemptions were based upon the nature of the entities required to collect it, groups whose very purpose was to serve, benefit and improve the community, and that in considering the economic effect of the tax, the drafters might have reasoned that if exempted from the administrative, fiscal and accounting duties attendant to collecting and remitting the revenue, the organizations could devote more effort and money to their beneficent endeavors, which relieve the government of many burdens it would otherwise be obliged to bear. It is significant to note, however, that although the *Kerasotes* court applied the same reasoning regarding the economic effect of the tax on the cost of government in reviewing the governmental exemption, it nevertheless held the tax invalid as being discriminatory since the Federal government was not exempted as were State and local agencies.

At issue in *Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 362 N.E.2d 1030, *cert. denied* (1977), 434 U.S. 924, 54 L. Ed. 2d 282, 98

S. Ct. 402, was an ordinance which imposed a tax on the lease or rental of certain types of personal property while excluding others, and further provided for a lower rate of tax on real estate transactions involving nonresidents of the city than on those involving residents. The court upheld the ordinance stating that the classifications may have been based on considerations of administrative convenience and expense of collection; or the city council's determination that it would be impractical to impose a tax on all leases and rentals, some of which might occur infrequently; or that the tax would be inordinately expensive to administer or unduly burdensome when applied to certain types of transactions because of the particular nature of the property or the existence of other tax or regulatory laws already placed upon it. The court also held that the difference in tax rates on real estate transactions could be justified on the premise that nonresidents make less use of city services than do residents and therefore should be taxed at a lower rate.

Similarly, in an action brought by various business, commercial and industrial plaintiffs, the supreme court in *Jacobs v. City of Chicago* (1973), 53 Ill. 2d 421, 292 N.E.2d 401, held that the exemption of residential parking lots and garages provided by landlords to tenants on a rental basis pursuant to a rental agreement from the provisions of an ordinance imposing a tax on the privilege of occupying space in a parking facility was a reasonable classification based upon the nature of the facility, *i.e.*, commercial as opposed to residential, noting that zoning ordinances have long distinguished property on the basis of the purpose for which it is used.

■ Unlike the courts in *Kerasotes* and *Holland*, we can think of no public policy considerations with respect to the economic effect of the tax which would justify imposing it only on some purchasers of alcoholic beverages while exempting others. Nor, as in those cases and *Jacobs*, is there any real and substantial differences in the nature of the entities liable for or exempt from collecting and remitting the tax. All are retail businesses—and to some extent competitors—among which the city makes no distinction with regard to licensing, there being but one type of liquor license issued in Chicago for which all licensees must pay the same fee irrespective of whether they sell alcoholic beverages by the drink, in packaged form, or both. Furthermore, since all retail-liquor licensees in the city are currently required to maintain records of all liquor sales for purposes of State and county tax laws (see, *e.g., Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 338 N.E.2d 6), we do not believe, as did the courts in *Kerasotes, Williams* and *Holland*, that the duties of collecting, recording and remitting the

tax would be more burdensome to retailers who sell only packaged liquors than they would be to those who sell alcoholic beverages by the drink, or that the burdens on the city in administering the tax or collecting it from those retailers would be greater so as to justify the city council's decision to exempt packaged liquor sales and to thereby forego receipt of the revenue—the goal of the ordinance, according to defendants—which the city would, presumably, derive therefrom. To the contrary, because the tax is to be computed by the number of ounces of alcohol in a given beverage according to a schedule assigning different rates to different types of alcohol, it would likely be less burdensome, in terms of computation, collection and bookkeeping, to those who sell alcoholic beverages only in packaged form—and correlatively less difficult for the city to administer—than to those who sell alcohol by individual drinks, many of which contain varying amounts and types of liquor. Thus, we find the cases relied upon by defendants to be inapplicable to the case at bar.

■ Defendants' suggestion that the classifications may "reflect *** the high social costs which the municipality bears for public drinking as compared with private consumption of alcohol in the home" is equally unpersuasive in that the very premise on which it rests, *i.e.*, that packaged liquor is in fact consumed quietly and legally in private homes, is belied both by common experience and statistics relating to convictions for transportation of open containers of alcohol in automobiles (Ill. Rev. Stat. 1983, ch. 95½, par. 11—502), and numerous other offenses involving disorderly and illegal, though private, consumption of alcohol. Furthermore, as plaintiffs point out, public drinking is subject to certain controls by virtue of the Liquor Control Act of 1934 (Ill. Rev. Stat. 1983, ch. 43, par. 131), and other State laws and local ordinances which generally are not applicable to the private consumption of alcohol, be it at home or elsewhere. Thus, we do not believe the classifications can be justified on defendants' "social costs" hypothesis.

■ Finally, citing *Board of Education v. City of Peoria* (1979), 76 Ill. 2d 469, 394 N.E.2d 399, defendants assert that the "obvious distinction" between an ounce of liquor sold over the counter and one sold in prepackaged form constitutes a factual difference in the types of sales involved and thereby renders the classifications reasonable. In this regard, we note first, and defendants so. acknowledge, that the sole issue presented for review in that case was whether the city ordinances in question, which imposed a 2% tax on amusement admission fees and on food and alcohol served in restaurants and taverns, were enforceable against certain other governmental bodies. The supreme

court held that because the legal incidence of the tax was on the consumer the ordinances were "not *per se* invalid" when applied to other units of local government, whose responsibility it was to collect and remit the tax, nor did they constitute an unauthorized regulation of the park district. The court did find, however, that the ordinances were invalid as to the school district since they imposed duties over and above those imposed by the General Assembly which has plenary power to regulate school district in Illinois. (Ill. Const. 1970, art. X, sec. 1.) Thus, having involved an entirely different issue from the one before us, we do not find *Board of Education v. City of Peoria* (1979), 76 Ill. 2d 469, 394 N.E.2d 399, to be controlling of the case at bar.

Moreover, the only factual difference apparent to us between the types of sales involved here is that along with the alcohol upon which the tax is measured, the purchaser of an alcoholic beverage for immediate, on-premises consumption receives certain services—such as having the drink mixed, or at least opened and poured, and served to him in a glass—and various amenities—such as the use and comfort of the premises' facilities, music, entertainment and the like—which usually are afforded only to patrons of establishments in the business of selling alcoholic beverages in open form by the drink. Defendants staunchly maintain, however, that the classifications are not based upon the services rendered by the retail dealer, which would lead us to the issue—also raised by plaintiffs—of whether this is an occupation tax enacted without express authorization by the General Assembly in contravention of section 6(e) of article VII of the Illinois Constitution (Ill. Const. 1970, art. VII, sec. 6(e)), but solely on the amount of alcohol in a given beverage. Since we fail to see the "obvious distinction" between an ounce of alcohol sold in open and one sold in closed form, we adhere to our finding that the classifications are arbitrary, discriminatory and unrelated to the ostensible purpose of the ordinance and that it cannot, therefore, be upheld.

In view thereof, it is unnecessary to address the remaining arguments advanced by plaintiffs as grounds for invalidating the tax before us.

For the reasons stated, the order of the trial court declaring the Chicago Alcoholic Beverage Tax Ordinance unconstitutional and unenforceable is hereby affirmed.

Affirmed.

LORENZ and PINCHAM, JJ., concur.