FEDERATED DISTRIBUTORS, INC., *et al.*, Plaintiffs-Appellants, v. J. THOMAS JOHNSON, as Director of the Department of Revenue, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 86—2572

Opinion filed October 22, 1987.

William J. Harte, Ltd., Richard J. Prendergast, Ltd., and Jenner & Block, all of Chicago (William J. Harte, Richard J. Prendergast, John B. Simon, Russ M. Strobel, and Edward J. Lewis II, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Ann Plunkett-Sheldon, Assistant Attorney General, of Chicago, of counsel), for appellee.

Sidley & Austin, of Chicago (Samuel K. Skinner, Thomas A. Roberts, and Sally Hewitt, of counsel), for *amicus curiae* Wine Institute.

Kirkland & Ellis, of Chicago (George A. Joseph and Robert J. Kopecky, of counsel), for *amicus curiae* Anheuser-Busch.

JUSTICE LINN delivered the opinion of the court:

Plaintiff Federated Distributors, Inc. (Federated), brings this appeal seeking reversal of a trial court order which upheld the constitutionality of an Illinois Department of Revenue (the Department) ruling imposing a $2-per-gallon tax on a product produced by Federated. The tax in question was imposed pursuant to the Liquor Control Act of 1934 (Ill. Rev. Stat. 1985, ch. 43, par. 94 *et seq.*) (the Act). Under the Act, manufacturers of wine or wine coolers containing less than 14% alcohol must pay a $.23-per-gallon tax, while manufacturers of

"spirits" must pay a $2-per-gallon tax. Federated manufactures "New Products," a spirit-based fruit-flavored drink similar to a "wine cooler." Although New Products contains less than 14% alcohol, the Department determined that because the alcohol in New Products was obtained from distillation rather than fermentation, the Act required Federated to pay the $2-per-gallon tax.

Soon thereafter, Federated requested administrative review of the Department's ruling in the circuit court of Cook County. However, after hearing the parties' respective positions, the trial court affirmed the Department's decision.

Federated now appeals, contending that there exists no real and substantial difference between New Products and wine coolers and that New Products should be taxed at the rate applicable to wine or wine coolers rather than at the rate applicable to hard liquors. Federated asserts that the Act, as applied to New Products pursuant to the Department's ruling, is discriminatory and unconstitutional.

We reverse.

BACKGROUND

The disagreement between Federated and the Department centers around differing interpretations of the Illinois Liquor Control Act. (Ill. Rev. Stat. 1985, ch. 43, par. 94 *et seq.*) The following provisions of the Act are relevant to the resolution of this appeal:

"Sec. 1—2. This Act shall be liberally construed, to the end that the health, safety and welfare of the People of the State of Illinois shall be protected and temperance in the consumption of alcoholic liquors shall be fostered and promoted by sound and careful control and regulation of the manufacture, sale and distribution of alcoholic liquors." Ill. Rev. Stat. 1985, ch. 43, par. 94.

"Sec. 1—3.02. 'Spirits' means any beverage which contains alcohol obtained by distillation, mixed with water or other substance in solution, and includes brandy, rum, whiskey, gin, or other spirituous liquors, and such liquors when rectified, blended or otherwise mixed with alcohol or other substances." Ill. Rev. Stat. 1985, ch. 43, par. 95.02.

"Sec. 1—3.03. 'Wine' means any alcoholic beverage obtained by the fermentation of the natural contents of fruits, or vegetables, containing sugar, including such beverages when fortified by the addition of alcohol or spirits, as above defined." Ill. Rev. Stat. 1985, ch. 43, par. 95.03.

"Sec. 8—1. A tax is imposed upon the privilege of engaging

in business as a manufacturer or as an importing distributor of alcoholic liquor other than beer at the rate of [$.23] per gallon for wine containing 14% or less of alcohol by volume, [$.60] per gallon for wine containing more than 14% of alcohol by volume, and $2.00 per gallon on alcohol and spirits manufactured and sold or used by such manufacturer, or as agent for any other person, or sold or used by such importing distributor, or as agent for any other person." Ill. Rev. Stat. 1985, ch. 43, par. 158.

Important to the present dispute is the Act's distinction between "wine" and "spirits." Under the Act, wine or wine coolers[1] contain alcohol produced by fermentation, while spirits, or "hard liquors" such as rum and whiskey, contain alcohol derived from distillation. Wine or wine coolers containing less than 14% alcohol are taxed at $.23 per gallon, while hard liquor is taxed at $2 per gallon.

In the instant case, New Products is an alcoholic drink which is produced from a combination of water, flavoring, fruit juices, vegetable juices, sugar, corn syrup, artificial carbonation and fortified by the addition of spirits. The alcohol in New Products is produced by distillation rather than fermentation.

Prior to introducing New Products to the market, Federated petitioned the Department for an administrative ruling regarding the tax applicable to New Products. It was Federated's position that even though the alcohol in New Products was produced by distillation, nevertheless, the total alcoholic percentage in New Products was less than 14%. Consequently, Federated argued that the $.23-per-gallon rate should apply to New Products, for New Products was, essentially, a type of wine cooler.

On March 21, 1986, the Department issued a ruling that placed New Products within the same classification as wine and wine coolers. In fact, the Department stated that New Products, "in alcoholic content, are most closely analogous to the category of wine under 14%." That being the case, the Department ruled that the $.23-per-gallon tax rate applied to New Products "regardless of whether the alcohol contained therein is originally produced as a wine or as a neutral grain spirit."

However, on April 24, 1986, the Department reversed its previous ruling. The Department stated, "We have re-examined this issue and

---

[1]The Department has previously ruled that wine coolers, which contain alcohol derived from a fermentation process and which contain less than 14% alcohol, should receive the same tax treatment as ordinary wine.

[have] determined that technically the products that you have described, the [New Products] regardless of the alcoholic content, fall within the present statutory definition of a spirit." The Department then ruled that New Products would be taxed at the rate of $2 per gallon, similar to that placed upon hard liquors.

Federated appealed the Department's ruling to the trial court. In affirming the Department's decision, the trial court found that: (1) New Products contains distilled alcohol and therefore falls within the definitions of "spirits" as set forth by the Act; and (2) the purpose of the Act is to promote temperance in the consumption of alcohol and placing New Products within the higher tax rate helps fulfill that purpose.

Federated now brings this appeal.

OPINION

■■ ■ The parties agree on the case law applicable to the issues raised in this appeal. It is well settled that the legislature has broad powers in the area of establishing classifications to define subjects of taxation. (*Klein v. Hulman* (1966), 34 Ill. 2d 343, 215 N.E.2d 268.) There is a general presumption favoring the validity of classifications created by legislative bodies in taxing matters and the party who attacks the classification has the burden of proving that the classification is unconstitutional. (*Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 362 N.E.2d 1030.) The legislature's authority is limited only in that it cannot exercise its taxing power arbitrarily; the legislature must not, under the guise of a "classification," discriminate against one and in favor of another where both are similarly situated. (*People v. McCabe* (1971), 49 Ill. 2d 338, 275 N.E.2d 407.) Classifications created by the legislature must be based upon real and substantial differences of condition or situation between those subject to the tax and those excluded and must bear some reasonable relationship to the purpose of the legislation. (*Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 432 N.E.2d 227.) Courts have found classifications unconstitutional where the statute in question included within a class those in fact not within it or have excluded from a class those properly belonging to it. (89 Ill. 2d 45, 72, 432 N.E.2d 227, 239-40.) As the Illinois Supreme Court recently summarized:

"[I]t must appear that the particular classification is based upon some real and substantial difference in kind, situation or circumstance in the persons or objects on which the classification rests, and which bears a *rational relation* to the evil to be remedied and the purpose to be attained by the statute ***."

*Boynton v. Kusper* (1986), 112 Ill. 2d 356, 366-67, 494 N.E.2d 135, 139.

In the case at bar, the parties' respective positions are fairly straightforward. The Department asserts that under the language of the Act, New Products falls within the definition of a spirit as set forth in section 1—3.02. The Department points out, and Federated agrees, that the alcohol in New Products is obtained from a distilling process rather than from fermentation. Therefore, New Products is a "beverage which contains alcohol obtained by distillation, mixed with water or other substance." (Ill. Rev. Stat. 1985, ch. 43, par. 95.02.) That being the case, it is the Department's contention that under section 8—1, New Products is subject to the $2-per-gallon tax, rather than the $.23-per-gallon tax, for New Products is, under the precise language of the Act, a spirit rather than a wine.

Federated, on the other hand, argues that there is no real and substantial difference between New Products and wine and wine coolers and that to tax New Products as a "spirit" (as defined by section 1—3.02) rather than as a wine-based product is therefore unconstitutional. It is Federated's position that New Products contains the same percentage of alcohol as wine and wine coolers, contains essentially the same ingredients, and is sold to the same consumer base. Federated further contends that the only distinction between New Products and wine and wine coolers is that the alcohol used in New Products is obtained through a different process from that used in wine and wine coolers (*i.e.*, distillation compared with fermentation). Finally, Federated asserts that classifying New Products with other "hard liquors" frustrates the Act's stated purpose; namely, fostering and promoting temperance in the consumption of alcoholic liquors.

Statutory construction demands that a court of law ascertain legislative intent not only from the language employed in a particular statute, but also from the law's purpose as gleaned from the overall spirit of the statute. (*Gill v. Miller* (1983), 94 Ill. 2d 52, 445 N.E.2d 330.) In so doing, we should be mindful of the subject matter addressed by the statute and the legislature's apparent objective in enacting it. *Chastek v. Anderson* (1981), 83 Ill. 2d 502, 416 N.E.2d 247.

In the present case, we agree with Federated.

To begin, New Products and wine or wine coolers are virtually identical in every aspect except one; the method in which the alcohol in each product is obtained. In wine, the alcohol is obtained through fermentation. In New Products, the alcohol is derived from distillation.

Distillation and fermentation, however, are both simply processes.

The purpose of each process, in the world of liquors, is to produce the same object: alcohol. It is the alcohol, not the process from which it is derived, that the Act is meant to regulate. New Products can only be classified differently from wine or wine coolers, therefore, if there exists a real and substantial difference between the ingredients and alcoholic content of New Products and the ingredients and alcoholic content of wine or wine coolers. (See *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 432 N.E.2d 227; *Boynton v. Kusper* (1986), 112 Ill. 2d 356, 494 N.E.2d 135.) However, since the ingredients in New Products are nearly identical to that of wine or wine coolers, and since the percentage of alcohol in both New Products and wine or wine coolers is precisely the same, there exists no real or substantial difference between the two types of beverages. To differentiate between two nearly identical alcoholic beverages based only on the process or method used to produce a single ingredient in those beverages constitutes an unreasonable and illogical interpretation of the Act.

Furthermore, it is evident that the Act utilizes the terms "fermentation" and "distillation" merely as a means of clarifying, as opposed to classifying, which beverages fall within the Act's three tax classifications. The presence of alcohol derived from distillation does not automatically result in a beverage's being classified as a "spirit." In this regard, we note that spirits can be combined with wine without causing the wine to lose its favored tax status. (See Ill. Rev. Stat. 1985, ch. 43, par. 95.03.) Thus, the presence of the exact type of alcohol which New Products contains (distilled) can be combined with wine and, assuming the total alcoholic percentage is less than 14%, the beverage can remain classified as a wine. Consequently, if distilled alcohol can be combined with wine and still permit the beverage in question to remain classified as a wine, it is obvious that distilled alcohol can be added to a beverage containing nearly the same ingredients as wine (but having no fermented alcohol) and still permit the beverage to remain classified as a wine; provided, of course, that the total alcoholic content does not exceed 14%. With that in mind, we can discern no real and substantial difference between New Products and wine or wine coolers and we therefore find no merit in the Department's assertion that New Products should be placed in a different tax classification simply because New Products contains distilled rather than fermented alcohol.

The evil sought to be remedied by the Act is also not served by the Department's interpretation. The evil addressed by the Act is the abuse of alcohol. The Act seeks to alleviate that danger by making

certain alcoholic beverages more expensive than others.[2] The legislature determined that a greater danger of abuse is posed by these beverages, such as hard liquors which have a higher alcoholic content. As a means of discouraging their consumption, the Act places a higher tax on those beverages. By making hard liquor more costly, the public is discouraged from purchasing it and the evil of alcohol abuse is curtailed. Similarly, a lower tax is placed on beverages with a lower alcoholic content because they pose less danger of abuse when consumed. Wine having less than 14% alcohol is considered to be least dangerous and is, accordingly, taxed at the lowest rate.

Consequently, because New Products is, by its alcoholic content, in the same class as wine and wine coolers, taxing New Products at a higher rate bears no rational relationship to the evil sought to be remedied; a beverage of the least alcoholic content, and thus the least danger of abuse, is being taxed at the same rate as those posing the greatest danger of abuse. To be consistent with the overall theme of the Act, New Products should be taxed at the lowest rate, as it poses the least danger of abuse. By adhering to this taxation structure, the public is encouraged to purchase those beverages containing a lower alcoholic content and the threat posed by alcohol abuse is lessened.

In the same vein, placing a higher tax on New Products runs contrary to the Act's express purpose.

The Act specifically states that "temperance in the consumption of alcoholic liquors shall be fostered and promoted." (Ill. Rev. Stat. 1985, ch. 43, par. 94.) With that goal in mind, the legislature created three different tax rates of $.23 per gallon, $.60 per gallon, or $2 per gallon. Which tax rate applies is determined, pursuant to section 8—1, by looking to the percentage of alcohol in the particular beverage. The greater the amount of alcoholic content, the higher the tax charged to the beverage in question.

The Act's elevated taxation scheme reveals the legislature's attempt to promote temperance by making the price of certain beverages more expensive than the price of others. By taxing beverages containing less than 14% alcohol at a lower rate than hard liquors such as rum and whiskey, it is apparent that the Act is intended to encourage (via the differing tax rates) the consumption of some beverages while discouraging the consumption of others. Running throughout the Act, however, is a single consistent theme; the tax charged to

---

[2]In the court below, the Department claimed: "[O]ne of the legislature's methods for fostering and promoting temperance in the consumption of alcoholic liquors is by taxing 'hard liquors' at a higher rate of tax than beer or wine."

a particular beverage is based on the danger of potential abuse which, in turn, is reflected in the percentage of alcohol which that beverage contains. See Ill. Rev. Stat. 1985, ch. 43, par. 158.

Based on that legislative purpose, it is apparent that placing New Products in the same classification as hard liquors such as rum and whiskey runs contrary to the legislature's intent. It is uncontroverted that New Products contains less than 14% alcohol. It is equally uncontroverted that the alcoholic content in New Products is nowhere near as great as that present in hard liquors such as rum and whiskey. As a result, under the taxation scheme set forth above, and based on our interpretation of the legislature's intent in establishing that scheme, we are convinced that New Products should be taxed at the same rate as those beverages which it is most similar to, namely, wine or wine coolers. This reading of the statute fulfills the Act's intent of promoting temperance, for a beverage containing the least percentage of alcohol is taxed at the lowest rate, is made less costly, and is therefore more attractive to the consuming public.

In sum, we can find no real and substantial difference between the ingredients and alcoholic content contained in New Products and that contained in wine or wine coolers. Second, placing New Products in the same classification as hard liquors bears no rational relationship to the evil sought to be remedied by the Act. And third, placing New Products in any classification other than that enjoyed by wine or wine coolers is contrary to the legislature's intent of promoting temperance through varying tax rates.

CONCLUSION

Accordingly, for the reasons set forth above, we reverse the trial court's ruling affirming the Department's decision and order that New Products be taxed at the same rate currently applicable to wine and wine coolers.

Reversed.

JOHNSON and JIGANTI, JJ., concur.