CHICAGO HEALTH CLUBS, INC., *et al.*, Plaintiffs-Appellees, v. RONALD PICUR, Comptroller of the City of Chicago, *et al.*, Defendants-Appellants.

First District (4th Division) No. 86—0894

Opinion filed May 7, 1987.

McMORROW, P.J., dissenting.

Judson H. Miner, Acting Corporation Counsel, of Chicago (Ramsay Laing Klaff, Jennifer A. Keller, and Stanley R. Kaminski, Assistant Corporation Counsel, of counsel), for appellants.

Michael L. Sklar, Frances H. Krasnow, Robert Radasevich, and William J. Popper, all of Lurie, Sklar & Simon, Ltd., and William Goldberg, of Holleb & Coff, both of Chicago, for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiffs, various racquetball, tennis, health, and exercise clubs, and one dues-paying member of such a club, brought an action in the circuit court of Cook County against defendants, Ronald Picur, comptroller of the city of Chicago; Cecil A. Partee, city treasurer; Charles Sawyer, city director of revenue; and the city itself. Plaintiffs alleged that the Chicago Amusement Tax Ordinance (Chicago Municipal Code sec. 104—1 *et seq.* (1984)), as amended to include health and racquetball clubs within the definition of taxable amusements, was unconstitutional for various reasons.

Plaintiffs sought (1) a declaration that the amusement tax amendment was unconstitutional, and (2) an injunction preventing defendants from enforcing the ordinance. Defendants moved to dismiss the complaint. The trial court denied defendants' motion to dismiss and issued an order declaring the tax amendment unconstitutional and enjoining defendants from enforcing the ordinance. Defendants appeal from this order pursuant to Supreme Court Rule 307(a)(1) (87 Ill. 2d R. 307(a)(1)). Defendants contend that the trial court erred in (1) denying their motion to dismiss the complaint and (2) declaring the amusement tax amendment unconstitutional and issuing the injunction.

We reverse.

The Chicago Amusement Tax Ordinance (Chicago Municipal Code sec. 104—1 *et seq.* (1984)) provides for a tax upon patrons of amusements located within the city. The city taxes the privilege of witnessing, viewing, or participating in such amusements. The tax rate is 4% of the admission fee or other charge that the patron pays to participate in the amusement. Chicago Municipal Code sec. 104—2A (1984).

The ordinance is limited to amusements in the city. When the admission fee entitles the patron to participate in amusements both within and outside of the city, the city taxes only that portion of the admission fee attributable to the right to use city facilities. Additionally, when a patron's total fee includes the right to participate in activities that are not amusements, the nonamusement charges must be

separately stated on the patron's bill and be excluded from the tax base. Chicago Municipal Code sec. 104—2A (1984); Chicago Department of Revenue Ruling No. 86—1.

Under the ordinance, owners, managers, and operators of amusements are trustees for and on behalf of the city. They are responsible for collecting the tax, keeping accurate records of the monies collected, and remitting collected revenues to the city. The ordinance subjects amusement providers to penalties and interest for failing to perform these duties. However, an amusement provider's failure to collect the tax from a patron does not release the patron from his obligation to pay the tax. Chicago Municipal Code sec. 104—3 (1984).

On December 23, 1985, the Chicago city council amended sections 104—1 and 104—2 of the Amusement Tax Ordinance. According to the ordinance, as amended, an amusement includes, *inter alia*, "any entertainment or recreational activity offered for the public participation or on a membership or other basis." (Chicago Municipal Code sec. 104—1(2) (1984).) The ordinance clarifies this category of amusements by listing several examples, including amusement park rides and games, dancing, bowling, and billiards. The December 23, 1985, amendment added "racquetball or health clubs ***, tennis, racquetball, swimming, weightlifting, body building or similar activities" to the ordinance's list of amusements. Chicago Municipal Code sec. 104—1(2) (1984).

The record shows that plaintiffs filed their complaint on January 9, 1986. Plaintiffs alleged that the amusement tax amendment was an impermissible occupation tax generally, or a tax specifically on the occupation of providing health club or similar services, that the classifications contained in the tax amendment were unreasonable, that the tax amendment applied extraterritorially, that the amendment was overly broad, that it was vague, and that it violated the constitutional prohibition against special legislation. Plaintiffs sought a declaration that the amusement tax amendment was unconstitutional and an injunction preventing defendants from enforcing the ordinance.

The record further shows that on January 29, 1986, defendants moved to dismiss the complaint for failing to state a cause of action. The trial court granted plaintiffs leave to file an amended complaint. Defendants allowed their motion to dismiss plaintiffs' complaint to stand as their motion to dismiss the amended complaint.

On March 31, 1986, the trial court issued an order denying defendants' motion to dismiss the complaint. In the same order, the trial court declared the tax amendment unconstitutional and granted plaintiffs an injunction preventing defendants from enforcing the ordi-

nance. The trial court found the statute unconstitutional because (1) the tax was an impermissible occupation tax and (2) because the term "recreational activities" was unconstitutionally vague. It is from this order that defendants appeal.

## I

■ Defendants first claim that the trial court erred in denying their motion to dismiss the amended complaint. They contend that our review of the injunction properly includes a review of the sufficiency of the complaint. Plaintiffs, however, claim that we cannot review that part of the trial court's order denying defendants' motion to dismiss because it was not final and appealable. Thus, plaintiffs argue, the only issue before us is whether the trial court erred in issuing the injunction. They ask us to dismiss that portion of this appeal challenging the denial of defendants' motion to dismiss.

Plaintiffs are correct that we have jurisdiction over only final orders of the trial court and that the denial of a motion to strike and dismiss is an interlocutory order that does not finally dispose of the proceeding so as to give us jurisdiction on appeal. (*Jursich v. Arlington Heights Federal Savings & Loan Association* (1980), 83 Ill. App. 3d 352, 403 N.E.2d 1260.) Plaintiffs are also correct that the order to dismiss in the instant case does not fall within the two exceptions to this rule contained in Supreme Court Rules 307 and 308 (87 Ill. 2d Rules 307, 308). Thus, under these circumstances alone, we would dismiss the appeal from the trial court's denial of the motion to dismiss the complaint. *Jursich v. Arlington Heights Federal Savings & Loan Association* (1980), 83 Ill. App. 3d 352, 403 N.E.2d 1260.

However, in the absence of an answer, it is appropriate for a reviewing court to consider whether a complaint for injunctive relief was sufficient. (*Whitaker v. Pierce* (1976), 44 Ill. App. 3d 148, 150, 358 N.E.2d 61, 63.) Although a court will take all well-pleaded facts as true, the complaint must clearly show that the relief sought is warranted. "Allegations supporting the claim must be positive, certain, and precise. Mere opinion, conclusion, or belief will not suffice." (*McErlean v. Harvey Area Community Organization* (1972), 9 Ill. App. 3d 527, 529, 292 N.E.2d 479, 481.) If the face of the complaint does not show sufficient grounds for a court to interfere in the matter, then it is error to grant injunctive relief. *Biehn v. Tess* (1950), 340 Ill. App. 140, 145, 91 N.E.2d 160, 162.

■ In the case at bar, defendants did not answer the amended complaint. We conclude, therefore, that we may review its sufficiency. We deny plaintiffs' motion to dismiss that portion of this appeal chal-

lenging the trial court's denial of defendants' motion to dismiss the amended complaint.

## II

■ After reviewing the record, we find that the December 23, 1985, amusement tax amendment is constitutional in all respects. Consequently, we conclude that the amended complaint failed to show sufficient grounds for the trial court to interfere in the matter or that the relief sought was warranted. We hold, therefore, that the trial court should have dismissed the amended complaint.

## II-A

The trial court found that the amusement tax amendment was an occupation tax and, therefore, invalid under article VII, section 6(e), of the 1970 Illinois Constitution. That provision states in pertinent part:

> "(e) A home rule unit shall have only the power that the General Assembly may provide by law *** (2) to license for revenue or impose taxes upon or measured by income or earnings or upon occupations." Ill. Const. 1970, art. VII, sec. 6(e).

We hold that the amusement tax amendment does not violate article VII, section 6(e), of the 1970 Illinois Constitution. Defendants first argue that the threshold question presented here is whether the amusement tax amendment is an occupation tax. Defendants contend that they do not impose the tax with regard to plaintiffs' occupational status. Therefore, relying on *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 357 N.E.2d 1118, defendants argue that the tax is not an occupation tax; it is constitutional and the inquiry is at an end. (65 Ill. 2d 10, 24, 357 N.E.2d 1118, 1124.) Plaintiffs contend, in response, that the amusement tax amendment is an occupation tax, relying, *inter alia,* on *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 432 N.E.2d 227.

The definition of an occupation tax was clear from cases such as *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 357 N.E.2d 1118, and *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 317 N.E.2d 3. Our supreme court, however, cast confusion on the definition in *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 81-82, 432 N.E.2d 227, 244 (Underwood, J., concurring in part and dissenting in part). We determine the validity of the amusement tax amendment by using a different route. Therefore, we do not reach and express no opinion on whether the amusement tax amendment is an occupation tax.

## 1

■ Article VII, section 6(e), of the Illinois Constitution prohibits a home rule unit from imposing an occupation tax absent approval from the General Assembly. Pointing to this provision, defendants argue that if the legislature authorizes a home rule unit to impose a tax, then it does not matter if the tax is or is not an occupation tax. Defendants further argue that the legislature authorizes any municipality to tax amusements under section 11—42—5 of the Municipal Code, which provides in part:

> "The corporate authorities of each municipality may license, tax, *** theatricals and other exhibitions, shows, and amusements ***." (Ill. Rev. Stat. 1985, ch. 24, par. 11—42—5.)

Defendants note that Justice Schaefer of the Illinois Supreme Court held this view in *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 24-25, 357 N.E.2d 1118, 1124-25 (Schaefer, J., concurring).

Plaintiffs claim that section 11—42—5 of the Municipal Code is no longer effective because it predates the adoption of the 1970 Constitution, relying on the dissent in *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 25, 357 N.E.2d 1118, 1125 (Kluczynski, J., concurring in part and dissenting in part). Plaintiffs, however, acknowledge that we, relying on Justice Schaefer's concurring opinion in *Town of Cicero*, have twice held that section 11—42—5 survived the adoption of the 1970 Constitution and authorizes municipalities to tax amusements. (*Wellington v. City of Chicago* (1986), 144 Ill. App. 3d 774, 780-82, 494 N.E.2d 603, 608-09, *appeal denied* (1986), 112 Ill. 2d 598; *Isberian v. Village of Gurnee* (1983), 116 Ill. App. 3d 146, 150, 452 N.E.2d 10, 13-14, *appeal denied* (1983), 96 Ill. 2d 540.) We hold, therefore, that section 11—42—5 of the Municipal Code authorizes defendants to tax amusements.

## 2

■ After reviewing the record, we further conclude that plaintiffs are amusements within the meaning of section 11—42—5 of the Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 11—42—5). Plaintiffs claim that an amusement suggests "an activity that is pleasant or diverting and of short or contained duration." Pointing to affidavits submitted with their complaint, plaintiffs contend that "obtaining results from the service of a health club is not a matter of 'pleasant diversion.' It requires initiative and motivation to spend hundreds of dollars for health club services, and commitment and hard work over time to obtain the benefits."

Our supreme court has held that amusements include participatory as well as exhibitory entertainment. Further, a court must determine whether an entertainment is an amusement under section 11—42—5 of the Municipal Code based on the particular facts of each case. (*Stiska v. City of Chicago* (1950), 405 Ill. 374, 383, 90 N.E.2d 742, 747.) As a result, this court has held that a tennis club was an amusement under section 11—42—5 of the Municipal Code (*Greater Chicago Indoor Tennis Clubs, Inc. v. Village of Willowbrook* (1975), 30 Ill. App. 3d 134, 138, 332 N.E.2d 199, 203); the supreme court agreed (63 Ill. 2d 400, 406, 349 N.E.2d 3, 7).

Plaintiffs' attempt to remove themselves from the definition of an amusement under section 11—42—5 fails. A patron of a tennis club devotes as much initiative, motivation, commitment, hard work, and money as a patron of a health or racquetball club. If a tennis club is an amusement under section 11—42—5, so then is a health or racquetball club. We hold, therefore, that health and racquetball clubs are amusements within the meaning of section 11—42—5 of the Municipal Code. We further hold that since the legislature authorizes municipalities to tax amusements, then the amusement tax amendment does not violate article VII, section 6(e), of the 1970 Illinois Constitution.

## II-B

The trial court also found that the amusement tax amendment was unconstitutionally vague. Plaintiffs additionally argue that the amendment is unconstitutionally overbroad. Each defect violates due process under both the Federal and Illinois constitutions. The United States Supreme Court has stated that "[i]n a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and *** should uphold the challenge only if the enactment is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 494-95, 71 L. Ed. 2d 362, 369, 102 S. Ct. 1186, 1191.

## 1

Plaintiffs alleged in the complaint that the amusement tax amendment was overbroad because (a) the enactment inadequately defines the term "amusement," (b) the base upon which defendants impose the tax includes fees for nonamusements, and (c) the amendment applies to fees contractually agreed upon prior to its enactment.

■ We first note that, as a general rule, courts apply the same rules of construction to municipal ordinances as they do to statutes. (*Kostecki v. Pavlis* (1986), 140 Ill. App. 3d 176, 181, 488 N.E.2d 644, 647, quoting *Village of Schaumburg v. Franberg* (1981), 99 Ill. App. 3d 1, 5, 424 N.E.2d 1239, 1242.) Plaintiffs have failed to specify, and we cannot find, any constitutionally protected conduct that the amusement tax amendment affects. Their overbreadth challenge, therefore, fails. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 494-95, 71 L. Ed. 2d 362, 369, 102 S. Ct. 1186, 1191.

■■ ■ We further note that a legislative body may articulate reasonable definitions of any terms within an enactment. Courts should sustain such definitions for the purposes of the act and should not indulge in hypothetical reasoning. (*Heerey v. Zoning Board of Appeals* (1980), 82 Ill. App. 3d 1088, 1092, 403 N.E.2d 617, 620, citing *Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55, 66, 108 N.E.2d 8, 14.) Reviewing the amendment, we conclude that it adequately defines the term "amusement" and that it does not tax non-amusement fees. Lastly, a taxing body may impose a tax upon the subject of contracts that predate the tax. "The imposition of a new tax, or an increase in the rate of an old one, is one of the usual hazards of business enterprise ***." (*John McShain, Inc. v. District of Columbia* (D.C. Cir. 1953), 205 F.2d 882, 883.) We hold that the amusement tax amendment is not constitutionally overbroad.

2

The trial court found that the amusement tax amendment was constitutionally vague because it inadequately defined the term "recreational activity." Plaintiffs further alleged in their complaint that several other specific terms in the amendment were constitutionally vague and also that the amendment, as a whole, was vague because it provided insufficient guidelines for collection and remittance of the tax.

■ A statute does not violate the due process clauses of the Federal or Illinois constitutions on grounds of vagueness if the statute describes the duty that it imposes in terms definite enough to serve as a guide to those who must comply with it. (*Chastek v. Anderson* (1981), 83 Ill. 2d 502, 507, 416 N.E.2d 247, 249.) A statute is void for vagueness if it is so incomplete, vague, indefinite, and uncertain that persons of ordinary intelligence must necessarily guess at its meaning and differ as to its application. (*S. Bloom, Inc. v. Korshak* (1972), 52 Ill. 2d 56, 64, 284 N.E.2d 257, 262.) Further, if a doubt exists as to

the construction of an ordinance, a court must resolve the doubt in favor of an interpretation that supports the ordinance. 52 Ill. 2d 56, 64, 284 N.E.2d 257, 262-63.

Additionally, it is not necessary that a statute specifically defines each of its terms and that the statute delineates its exact application to all factual variations. Legislative bodies, of necessity, place the application of statutes or ordinances in the hands of various officers and administrative bodies that have the express or implied authority to adopt rules to guide persons involved in the assessment procedure and assure the uniform application of the statute or ordinance. "If there are borderline cases where [a statute or ordinance] is erroneously applied, these uncertainties can be resolved through judicial interpretation. The fact that such borderline cases exist will not, however, render the statute [or ordinance] unconstitutional." *O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260, 269, 408 N.E.2d 204, 208.

 Applying these principles to the instant case, we conclude that the amusement tax amendment is not unconstitutionally vague. We find that the amendment sufficiently defines its terms and that it establishes a reasonable collection mechanism; thus, it notifies reasonable persons of what fees are and are not subject to the tax and such persons should not differ as to its application and meaning. We hold, therefore, that the amusement tax amendment is neither constitutionally overbroad nor void for vagueness.

### II-C

Plaintiffs also alleged in the complaint that several exemptions contained in the amusement tax amendment violate the equal protection clauses of both the Federal and Illinois constitutions. Plaintiffs challenge the exemption for patrons of "religious, educational and charitable institutions, societies or organizations" (Chicago Municipal Code sec. 104—2A(1) (1984)), "organizations conducted for the sole purpose of maintaining symphony orchestra and artistic presentations" (Chicago Municipal Code sec. 104—2A(3) (1984)), organizations maintained for "civic improvement" (Chicago Municipal Code sec. 104—2A(4) (1984)), and "fraternal organizations, legion posts, social and political groups" (Chicago Municipal Code sec. 104—2A(5) (1984)).

Plaintiffs additionally challenged an exemption for patrons of movie theatres that do not charge an admission fee greater than 90 cents and an exemption of the first 90 cents of admission fees to other movie theatres. (Chicago Municipal Code sec. 104—2B(1) (1984).) Plaintiffs also challenged the exemption of the first 20% of admission fees to live theatrical performances and the total exemption for pa-

trons of live theatre in auditoriums whose maximum seating capacity is less than 750 persons. Chicago Municipal Code sec. 104—2B(2) (1984).

Legislative bodies have very broad powers in establishing classifications that define the objects of taxation. These classifications will withstand constitutional attack so long as the classifications are reasonable. "The legislative determination as to those persons who are to be taxed and those not taxed must not be arbitrary [citations], and the classification must bear some reasonable relationship to the object of the legislation." *Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 432, 362 N.E.2d 1030, 1035.

■■■ There is a presumption favoring the validity of tax classifications made by legislative bodies; one who attacks such classifications has the burden of proving them to be arbitrary and unreasonable. (66 Ill. 2d 423, 432, 362 N.E.2d 1030, 1035.) The reasoning justifying the classification need not appear on the face of the statute. If a person can reasonably conceive any set of facts that would sustain a tax classification, then the classification must be upheld. The person who attacks the statute, therefore, has the burden of negating the existence of all such facts (66 Ill. 2d 423, 433, 362 N.E.2d 1030, 1035, quoting *Department of Revenue v. Warren Petroleum Corp.* (1954), 2 Ill. 2d 483, 490, 119 N.E.2d 215, 220), and must show that the classification is a hostile and oppressive discrimination against particular persons and classes (*Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 433, 362 N.E.2d 1030, 1035, quoting *Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 364, 35 L. Ed. 2d 351, 358, 93 S. Ct. 1001, 1006).

■■■ Applying these principles to the instant case, we conclude that plaintiffs' equal protection challenge fails. The amusement tax amendment's exemptions for patrons of various nonprofit organizations in section 104—2A are reasonable. As our supreme court said of such organizations in *Kerasotes Rialto Theater Corp. v. City of Peoria* (1979), 77 Ill. 2d 491, 497, 397 N.E.2d 790, 793:

> "They are not commercial enterprises but are *** organizations the purposes of which are to serve, benefit and improve the community in general. Thus, there is a difference between the organizations stated in the exemptions and those that are generally delegated to collect the tax from the consumer and pay it over to the city, and this difference would appear to constitute a basis for classifying the exempt bodies differently from the others.
>
> Placing the consumers of these exempt bodies in a different

class from the patrons of other amusements and exempting these consumers from taxation would appear to be reasonable."

The amusement tax amendment's exemptions concerning the first 90 cents per admission fee also withstand scrutiny. "We hold that the administrative convenience and the expenses incurred in the collection or measurement of the tax provide a sufficient justification and a reasonable basis" for defendants choosing not to collect the tax, when the burden of collecting or measuring the tax outweighs the benefits of so doing. (*Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 575, 317 N.E.2d 3, 14.) Lastly, the amusement tax amendment's exemptions concerning live theatrical performances also are constitutionally valid for this reason. We hold that the amusement tax amendment does not violate the equal protection clause of either the United States or Illinois constitutions.

## II-D

■■■ Plaintiffs alleged in the complaint that the amusement tax amendment had an extraterritorial governmental effect in violation of article VII, section 6(a), of the Illinois Constitution (Ill. Const. 1970, art. VII, sec. 6(a)). Plaintiffs note that some of them operate health clubs both inside and outside of the city and some of their membership plans enable a patron to use health clubs both inside and outside of the city for the payment of one fee. Since defendants impose the tax on gross membership fees, including those relating to the use of suburban facilities, plaintiffs contend that the tax amendment has an extraterritorial effect.

Plaintiffs are correct that a home rule unit does not possess extraterritorial governmental powers. (*Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 77-79, 432 N.E.2d 227, 242-43.) Plaintiffs, however, misread the amendment. They argued that defendants imposed the tax on gross membership fees, including those relating to the use of suburban clubs. The amusement tax amendment expressly limits the tax to the privilege of using amusements within the city. (Chicago Municipal Code sec. 104—2A (1984).) The Chicago department of revenue has further provided for the proration of fees relating to the privilege of using health clubs within the city. Chicago Department of Revenue Ruling No. 86—1.

Additionally, we have recently held that the Chicago Boat Mooring Tax "is not extraterritorial where it is imposed on persons who may reside outside of Chicago, but who enter Chicago harbors, use Chicago facilities and pay mooring or docking fees in Chicago." (*Forsberg v. City of Chicago* (1986), 151 Ill. App. 3d 354, 361, 502 N.E.2d 283,

290.) Suburban patrons of Chicago harbors pay the annual fee for the right to moor their boats, whether they do so or not. (Chicago Municipal Code, sec. 200.8—2A (1984).) Suburban patrons of certain health clubs likewise pay for the privilege of using health clubs in the city, whether they do so or not. The city may properly tax suburban patrons for this privilege. We hold that the amusement tax amendment does not have an extraterritorial governmental effect in violation of the Illinois Constitution.

### II-E

Plaintiffs alleged lastly in the complaint that the amusement tax amendment is special legislation in violation of article IV, section 13, of the 1970 Illinois Constitution, which states:

> "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, sec. 13.

This surprising argument must, of course, fail. The constitutional prohibition against special legislation expressly applies only to acts of the legislature; it does not apply to ordinances that a city adopts within its lawfully invested powers. (*People ex rel. Miller v. Cooper* (1876), 83 Ill. 585, 591, cited in *Block v. City of Chicago* (1909), 239 Ill. 251, 260, 87 N.E. 1011, 1014.) We hold that the amusement tax amendment did not violate article IV, section 13, of the 1970 Illinois Constitution.

We conclude that the amended complaint failed to show sufficient grounds for the trial court to interfere in this matter or that the relief that plaintiffs sought was warranted. We hold, therefore, that the trial court should have dismissed the amended complaint.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

PINCHAM, J., concurs.

PRESIDING JUSTICE McMORROW, dissenting:

I respectfully dissent from the majority's reversal of the trial court's order allowing the motion for preliminary injunctive relief of plaintiffs, certain racquetball, tennis, health and exercise clubs, and a

dues-paying member of one of these clubs (hereinafter the health clubs or the clubs), as well as its holding that the trial court should have dismissed the health clubs' amended complaint for failure to state a claim.

I disagree with the majority's decision that it need not resolve the question of whether the December 1985 amendment to the Chicago Amusement Tax (hereinafter 1985 Chicago Amusement Tax or the tax) (see Journal of Proceedings of the City Council of the City of Chicago 256786—8 (December 23, 1985), codified at Chicago Municipal Code, ch. 104, secs. 104—1 to 104—3 (1984-85)), as applied to membership dues[1] in "racquetball or health clubs" (Chicago Municipal Code, ch. 104, sec. 104—1(2) (1984)), is an attempt to establish a type of service tax. The majority reasons that it may avoid this question because the Illinois Supreme Court's decision in *Commercial National Bank v. City of Chicago* (1980), 89 Ill. 2d 45, 432 N.E.2d 227, "cast confusion" upon the meaning of the constitutional restriction of municipal service taxation absent legislative approval. The majority's position is not well taken. Resolution of whether the 1985 Chicago Amusement Tax constitutes a service tax is required before the majority can proceed to an analysis of whether the tax is authorized in the Illinois Municipal Code. In my opinion, the tax is a service occupation tax, since its practical operation and effect is to tax the sale of service and place collection, remittance duties, and penalties for noncompliance upon clubs engaged in the business of providing predominantly or primarily services to members.

I also disagree with the majority's view that the 1985 Chicago Amusement Tax is an authorized amusement tax because "health and racquetball clubs are amusements within the meaning of section 11—42—5 of the Municipal Code." (155 Ill. App. 3d at 490.) Here the majority adopts a construction of the tax which the city itself has never suggested, since the city urges only that certain activities at health or racquetball clubs, and not health or racquetball clubs *per se*, amount to taxable "recreational activities." The pertinent in-

---

[1]Neither the city nor the majority explicitly distinguishes among various kinds of club charges for the purpose of determining whether the tax withstands the constitutional challenges raised by the Health Clubs. The Health Clubs' argument is, in substance, focused solely upon the tax's reference to club membership dues and does not specifically question the tax's application to other club charges, *e.g.*, to a fee paid by a nonmember for no more than use of a club tennis court. As a result, I consider only the question of whether the tax's application to club membership dues is constitutionally infirm and do not address the constitutionality of the tax with respect to other club charges.

quiry is not whether a "racquetball or health club" is an amusement, but whether the municipal amusement occupation tax embodied in the Illinois Municipal Code authorizes the service occupation tax attempted by the city in its 1985 Chicago Amusement Tax. I conclude that section 11—42—5 of the Illinois Municipal Code does not provide for the service occupation taxation created in the 1985 Chicago Amusement Tax, or suggested by the city in its interpretation of the tax. As a result, the tax is contrary to article VII, section 6(e)(2), of the 1970 Illinois Constitution.

I also determine that the city's intended application of the 1985 Chicago Amusement Tax may violate equal protection. Specifically, I am particularly concerned that the majority refuses to explicitly consider the health clubs' argument regarding the city's interpretive application of a February 1986 amendment to the 1985 Chicago Amusement Tax, by which the tax was amended to include membership dues in social and eating clubs as taxable "recreational activities." The 1986 amendment has been the subject of an action filed against the city in the circuit court of Cook County. The trial court in that action took note of the instant cause and entered an agreed order pursuant to which the parties stipulated to the "correct" legal construction of the tax. The city then issued a letter opinion on the same subject. The majority's ruling in the case at bar is contradictory to and inconsistent with the agreed order in the challenge to the 1986 amendment. The majority's disposition is also contradictory to and inconsistent with the city's letter opinion, as well as the city's position regarding the legal interpretation to be given to the 1985 Chicago Amusement Tax.

In addition, I conclude that the 1985 Chicago Amusement Tax will have an impermissible extraterritorial effect. The plain language of the tax indicates that it applies to all purchases of club membership, entitling the member to club services, whenever the club has one facility in the city of Chicago. In so doing, the tax is imposed upon the sale of service both within and beyond the boundaries of the city of Chicago. The city urges, and the majority agrees, that the tax's extraterritorial effect may be properly limited by taxing only that percentage of club membership dues representing the portion of square feet of club facilities located in the city. This interpretation bears no relation to the tax, however, and is inconsistent with the city's interpretive application of the tax in other respects.

For these reasons, I would affirm the order of the trial court.

## I

The health clubs argue that the 1985 Chicago Amusement Tax, as applied to club membership dues, is a service tax that is not authorized as an amusement tax pursuant to the Illinois Municipal Code. In rejecting these claims, the majority reasons that it need not consider the Illinois Supreme Court's decision in *Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 432 N.E.2d 227. In this regard, the majority states, "The definition of an occupation tax was clear from cases such as *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 357 N.E.2d 1118, and *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 317 N.E.2d 3. Our supreme court, however, cast confusion on the definition [of an occupation tax] in [*Commercial National Bank*]. [Citation.] We determine the validity of the amusement tax amendment by using a different route. Therefore, we do not reach and express no opinion on whether the amusement tax amendment is an occupation tax." 155 Ill. App. 3d at 488.

The majority's refusal to consider *Commercial National Bank* is erroneous. *Commercial National Bank* is analogous to the case at bar and pivotal to a substantive resolution of whether the 1985 Chicago Amusement Tax, as applied to club membership dues, is an unauthorized service tax contrary to article VII, section 6(e)(2), of the 1970 Illinois Constitution. I also believe the majority is in error to conclude that disposition of the issue may be made solely on a consideration of section 11–42–5 of the Illinois Municipal Code. Instead, the question of whether the 1985 Chicago Amusement Tax is a service tax is central to resolution of whether the tax is authorized by section 11–42–5 of the Municipal Code. As a result, the issues cannot be severed, as the majority assumes.

The prohibition against a home rule municipality's taxation upon occupations finds its source in the Illinois Constitution of 1970. Article VII, section 6(a), of the Illinois Constitution accords to home rule municipalities, such as the city of Chicago, a broad power "to tax." (Ill. Const. 1970, art. VII, sec. 6(a); see *Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 57-58, 432 N.E.2d 227.) Section 6(e)(2) of article VII places certain limitations upon this broad taxing authority, stating that "[a] home rule unit shall have only the power that the General Assembly may provide by law *** to *** impose taxes upon or measured by income or earnings or upon occupations." Ill. Const. 1970, art. VII, sec. 6(e)(2); see *Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 50-51, 432 N.E.2d 227.

A tax upon "service" is recognized as a type of "occupation" tax, because "one of the reasons for the restriction on occupation taxes was to prevent the use of [a service] tax to circumvent the income tax restriction [also found in article VII, section 6(e)(2) of the Illinois Constitution]." (*Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 53, 432 N.E.2d 227, 230; see also *Springfield Hotel-Motel Association v. City of Springfield* (1983), 119 Ill. App. 3d 753, 758-59, 447 N.E.2d 345.) "The term 'service,' in the context of Illinois tax law, has generally been held to include all 'sales' transactions other than sales of tangible property." *Waukegan Community Unit School District No. 60 v. City of Waukegan* (1983), 95 Ill. 2d 244, 254, 447 N.E.2d 345, 349.

In *Commercial National Bank*, the Illinois Supreme Court ruled that the city of Chicago's service-tax ordinance was "unconstitutional as an attempt to impose a tax upon occupations without authorization by the General Assembly, contrary to article VII, section 6(e) of the 1970 Illinois Constitution." (*Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 49, 432 N.E.2d 227, 229.) The tax at issue in *Commercial National Bank* "impose[d] a tax on 'each purchaser who purchases service in the City *** at the rate of 1% of the purchase price of such service.' [Citation.] The tax [was] expressly imposed on the purchaser, but collection and remittance duties [were] placed on the seller, who [was] also liable for uncollected taxes." 89 Ill. 2d 45, 51, 432 N.E.2d 227, 229.

The Illinois Supreme Court determined that the ostensible legal incidence of the service tax upon the purchaser did not render the service-tax ordinance a nonoccupation tax. The court observed that "the tax must be judged by the standard of whether it is one imposed upon the privilege of engaging *in the business of selling services,* that is, in service occupations." (Emphasis in original.) (89 Ill. 2d 45, 62, 432 N.E.2d 227, 235.) In this regard the court reasoned that the relevant inquiry was "the practical operation of the entire ordinance, not just the simple declaration that the tax is on the purchaser." (89 Ill. 2d 45, 65, 432 N.E.2d 227, 236.) The court concluded that where the practical operation and effect of the tax falls upon the provider of service—because the tax is imposed upon the sale of service, and collection, remittance duties, and penalties are placed upon the service provider—the tax is a service occupation tax. 89 Ill. 2d 45, 66-67, 432 N.E.2d 227.

Based upon this reasoning, the court concluded that the service-tax ordinance at issue in *Commercial National Bank* imposed a service occupation tax. The court noted that the ordinance was substan-

tially similar to the Illinois Retailers' Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 120, pars. 440 *et seq.*) and observed that "by a few insertions, the city ha[d] attempted to convert an occupation tax [the Illinois Retailers' Occupation Tax] into a tax upon consumers." (89 Ill. 2d 45, 66, 432 N.E.2d 227, 236.) The court further noted that "[a]ll of the legal obligations imposed upon a seller by an occupation tax [were] imposed upon the seller of services by the Chicago ordinance [and] [a]ll of the legal obligations imposed upon the purchaser of services by the ordinance [were] also imposed upon the seller of services." 89 Ill. 2d 45, 66-67, 432 N.E.2d 227, 237.

The Illinois Supreme Court further determined that the tax, as a service occupation tax, was not authorized by the Illinois legislature. The court observed that the only municipal taxation of services permitted by the General Assembly is the Municipal Service Occupation Tax Act, which allows "all cities to tax service occupations measured by the cost of tangible personal property transferred incident to the sale of service. (Ill. Rev. Stat. 1979, ch. 24, par. 8—11—5.)" (89 Ill. 2d 45, 69, 432 N.E.2d 227, 238.) The court noted the many benefits of centralized collection and audit formulated under that scheme and reasoned that a tax such as Chicago's service-tax ordinance would be permissible pursuant to such a framework, provided the Illinois legislature determined that it would be appropriate. (89 Ill. 2d 45, 69-70, 432 N.E.2d 227.) Absent such authorization from the General Assembly, however, the court felt constrained to hold that Chicago's service-tax amendment violated article VII, section 6(e), of the 1970 Illinois Constitution.

In summary, in *Commercial National Bank*, the city of Chicago modified certain language in the Illinois Retailers' Occupation Tax to shift legal incidence of the tax to the purchaser. Under the guise of this modified tax, the city then attempted to tax the purchase of service in the city. However, the Illinois Supreme Court determined that because the ordinance taxed the sale of service and placed collection, remittance duties, and penalties upon the service provider, the ordinance was a service occupation tax. The court further noted that the only municipal service occupation tax authorized by the General Assembly, the Municipal Service Occupation Tax Act, did not permit the type of service taxation attempted in *Commercial National Bank*. As a result, the court held the tax contrary to article VII, section 6(e)(2), of the 1970 Illinois Constitution.

In my opinion, the 1985 Chicago Amusement Tax is similar to the Chicago service-tax ordinance found unconstitutional in *Commercial National Bank*. In the case at bar, the city has modified certain

language in its amusement occupation tax to shift legal incidence of the tax to club members.[2] The city now attempts, under the guise of its modified amusement occupation tax, to tax membership dues in a racquetball or health club.[3] These dues may constitute, in predominant or significant degree, payment for the sale of club services, such as tennis instruction, nutritional or weight loss counseling, or cardiovascular examinations. Also, the tax imposes collection, remittance duties, and penalties for noncompliance upon the clubs. As a result, the tax amounts to a service occupation tax. Since the tax does not fall within the purview of the Municipal Service Occupation Tax Act, which allows municipal taxation of the cost of personal property transferred as an incident to the sale of service, the tax is contrary to article VII, section 6(e)(2), of the 1970 Illinois Constitution.

The city claims that the 1985 Chicago Amusement Tax is not a service occupation tax because legal incidence of the tax is placed upon a club member, rather than the club itself. The position is not well taken. The fact that the legal incidence of the tax is ostensibly placed upon the member of a club is not dispositive of the question of whether the tax is an authorized service occupation tax. As the court noted in *Commercial National Bank*, the "mere recitation in

---

[2]The Chicago Amusement Tax was originally enacted in 1947. (Chicago Municipal Code, ch. 104, sec. 104—1 *et seq.* (1947); see *Journal of Chicago City Council Proceedings* 1168 (November 6, 1947).) In its original form, it was a tax on, *inter alia*, the occupation of providing an "amusement," and was permissible as an amusement occupation tax pursuant to section 11—42—5 of the Illinois Municipal Code. (*Stiska v. City of Chicago* (1951), 405 Ill. 374, 90 N.E.2d 742.) In 1980, the city council amended the ordinance to shift legal incidence of the tax, from the gross receipts of amusement owners, to the charges or fees which patrons pay to witness, view, or participate in amusements within the city of Chicago. (Chicago Municipal Code, ch. 104, sec. 104—1 *et seq.* (1980); see *Journal of Chicago City Council Proceedings* 2781 (April 16, 1980).) By amendment in December 1985, the city now purports to tax, *inter alia*, membership dues for "racquetball or health clubs."

[3]The 1985 Chicago Amusement Tax does not define the term "racquetball or health club." The city and the majority also do not offer a definition of the term. However, as appears from the substance of the city's representations in the instant cause, the city interprets the term to encompass a widely divergent group of clubs. For example, the city's position assumes that the term "racquetball or health club" includes those clubs that offer memberships entitling members to a wide array of benefits relating to both use of club facilities and receipt of club services such as nutritional instruction, weight loss counseling, and cardiovascular examinations and the like, and wherein receipt of club services is a significant, or the predominant, feature of club membership. I assume, *arguendo*, and solely for the purposes of analysis, that the city's view is correct.

the ordinance that the tax is upon purchasers *** [does not] transform an occupation tax into a tax upon the purchaser." *Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 67, 432 N.E.2d 227, 237.

Instead, the pertinent inquiry is, first and foremost, the nature of the transaction that is subject to taxation. (See 89 Ill. 2d 45, 63-64, 432 N.E.2d 227; see also Lenahan, *Home Rule Taxation of Services*, 70 Ill. B.J. 646, 647 (1983).) According to its plain language, the 1985 Chicago Amusement Tax applies to the entire amount of membership dues in any "racquetball or health club," regardless of the degree to which a particular club's membership costs may be allocated between use of club facilities and receipt of club services. As such, the 1985 Chicago Amusement Tax is a service tax, because taxation of membership dues in a club, whose significant or predominant feature is club services, clearly amounts to a tax upon a charge that is composed, in significant part, of the sale of "services" such as tennis instruction, weight loss counseling, cardiovascular examination, and the like. See *Waukegan Community Unit School District No. 60 v. City of Waukegan* (1983), 95 Ill. 2d 244, 254, 447 N.E.2d 345; *Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 63-65, 432 N.E.2d 227, 229.

The city does not dispute that taxation of the entire amount of membership dues in these circumstances would constitute an unlawful service tax. Instead, the city maintained during appellate oral argument that the tax applies solely to that portion of any club's membership dues that relate to the costs of member use of club facilities.[4]

I find this argument without foundation. First, there is nothing in the plain language of the tax that supports the city's position that the tax applies only to member use of club facilities. See generally, *e.g.*, *Illinois Power Co. v. Illinois Commerce Com.* (1986), 111 Ill. 2d 505, 510-11, 490 N.E.2d 1255; *Greer v. Illinois Housing Development Authority* (1986), 150 Ill. App. 3d 357, 392, 501 N.E.2d 723.

---

[4]The City's argument in this respect necessarily assumes that club dues may represent primarily or predominantly the sale of service. If club dues were only incidentally representative of the sale of service, the entire amount of such dues would be taxable as a charge for the privilege to use club facilities (see, *e.g.*, *Springfield Hotel-Motel Association v. City of Springfield* (1983), 119 Ill. App. 3d 753, 447 N.E.2d 345), and there would be no need for the city to apply the tax to only that portion of membership dues pertaining to the costs of member use of club facilities.

More importantly, even if the tax were applied only to that portion of membership dues that represents costs relating to member use of club facilities, the tax would remain a service occupation tax. Both Illinois statutory and case law recognize that a partial tax, upon only the portion of a service charge that pertains to nonservice costs, is nevertheless a service tax, that is, a tax imposed upon those engaged in the occupation of providing service. (See *Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 61-62, 65, 432 N.E.2d 227. Ill. Rev. Stat. 1985, ch. 24, par. 8—11—5 (Municipal Service Occupation Tax Act).) The only municipal service tax authorized by the Illinois legislature is found in the Municipal Service Occupation Tax Act, which allows taxation of the cost of tangible personal property transferred as an incident to the sale of service. The 1985 Chicago Amusement Tax admittedly does not fall within the purview of that act, and, similar to the service-tax ordinance in *Commercial National Bank*, is prohibited by article VII, section 6(e)(2), of the 1970 Illinois Constitution.

The city also seeks to justify its interpretation of the tax on the ground that the tax as so interpreted is an amusement occupation tax pursuant to section 11—42—5 of the Illinois Municipal Code. This section provides in relevant part that the "corporate authorities of each municipality may *** tax *** amusements and may *** tax *** all places for *** amusement." (Ill. Rev. Stat. 1985, ch. 24, par. 11—42—5.) Parenthetically, I agree with the decision of the majority that section 11—42—5 of the Illinois Municipal Code survives adoption of the 1970 Illinois Constitution, in accordance with the reasoning expressed in *Wellington v. City of Chicago* (1986), 144 Ill. App. 3d 774, 494 N.E.2d 603, and *Isberian v. Village of Gurnee* (1983), 116 Ill. App. 3d 146, 452 N.E.2d 10.

In my opinion, section 11—42—5 does not permit the 1985 Chicago Amusement Tax as interpreted by the city. Instead, section 11—42—5 authorizes a municipality to tax a charge that is purely for the privilege to use facilities to witness, view, or participate in "amusements," whether the legal incidence of the tax is placed upon the patron or the provider. (See *Kerasotes Rialto Theater Corp. v. Peoria* (1979), 77 Ill. 2d 491, 397 N.E.2d 790; *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 357 N.E.2d 1118; *Stiska v. City of Chicago* (1951), 405 Ill. 374, 90 N.E.2d 742.) Charging patrons for the privilege to use facilities to witness, view, or participate in an "amusement" is clearly not the sale of "service." Consequently, section 11—42—5 does not authorize a tax upon *service*, regardless of whether the tax is imposed upon the sale of

service *per se* or the cost of tangible personal property transferred incident to the sale of service or a charge for the privilege to use real property incident to the sale of service.

The city interprets the tax to apply to the incident use of club facilities which, standing alone, might arguably amount to an "amusement." In so doing, the city is attempting to create a tax upon a charge for the privilege to use real property incident to the sale of service. Section 11—42—5 of the Illinois Municipal Code does not permit a municipality to impose a tax upon a charge for the privilege to use real property incident to the sale of service. Nor does the section authorize partial taxation of the provision of an "amusement" incident to the sale of "service" or for the exclusion from the taxable "amusement" charge the costs relating to "non-amusement" activities. The Illinois legislature has not enacted a statute permitting municipal taxation of a charge for the privilege to engage in an "amusement" imposed as an incident to the sale of services such as weight loss counseling, nutritional instruction, or counseling which may implement or monitor medically prescribed activities. Consequently, the 1985 Chicago Amusement Tax exceeds the scope of municipal taxation authorized by the General Assembly, in violation of article VII, section 6(e)(2), of the 1970 Illinois Constitution.

I also note that the 1985 Chicago Amusement Tax is distinguishable from other amusement taxes which the Illinois Supreme Court has held were not "occupation" taxes or taxes upon the sale of "service." (See *Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 59-60, 63, 432 N.E.2d 227; *Kerasotes Rialto Theater Corp. v. Peoria* (1979), 77 Ill. 2d 491, 500-01, 397 N.E.2d 790 (Peoria Amusement Tax); *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 22-24, 357 N.E.2d 1118 (Cicero Amusement Tax).) The supreme court concluded that these amusement taxes were, instead, a kind of privilege or use tax upon the price of admission to the amusement facility. (See *Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 59, 63, 432 N.E.2d 277.) None of these municipal amusement taxes were imposed upon combined charges paid by patrons to also participate in the amusement provider's offerings of services. Moreover, none of the taxes were applied to only a prorated, proportional amount of a charge for both service and nonservice activities. As a result the decisions are distinguishable from the case at bar.

*Greater Chicago Indoor Tennis Clubs, Inc. v. Village of Willowbrook* (1975), 63 Ill. 2d 400, 349 N.E.2d 3, did not involve club

charges for patrons to engage in both amusement and nonamusement activities and is therefore inapposite to the case at bar. Furthermore, *Greater Chicago* did not hold, as the majority claims, that a "tennis club" is an "amusement"; the supreme court held that "indoor tennis" was an amusement under section 11—42—5 of the Illinois Municipal Code and declined to address the question of whether membership in a tennis club was properly taxed. 63 Ill. 2d 400, 406, 408, 349 N.E.2d 3.

I would observe that the majority's analysis on this question deviates from the majority's apparent agreement with the city's construction of the tax. The majority states that it "hold[s] *** that health and racquetball clubs are amusements within the meaning of section 11—42—5 of the Municipal Code." (155 Ill. App. 3d at 490.) If the majority feels that health clubs are "amusements" *per se*, the majority has ignored the city's distinction between club "amusement" activities (such as use of club facilities) and club "non-amusement" activities (such as nutrition instruction or weight loss counseling). Thus the majority's opinion appears to adopt a position which the city itself does not suggest, *i.e.*, that club services such as tennis instruction, diet counseling, cardiovascular examination, and the like amount to "amusements" under section 11—42—5 of the Illinois Municipal Code.

Whether the majority adopts the city's position in this respect is not explicitly stated by the majority. At no point in its opinion does the majority specifically recognize that clubs offer to their members services such as instruction, counseling, and physical fitness examinations. Instead, the majority appears to assume that membership in a racquetball or health club represents no more than payment for the privilege to use club facilities for athletic activities such as tennis, racquetball, swimming, exercise, and the like. Were this case truly limited to such circumstances as the majority assumes, resolution of the instant appeal might arguably approach more closely the apparent ease and simplicity with which the majority disposes of the health clubs' arguments.

In my view, the majority's decision "eliminate[s] th[e] limitation [of municipal service taxation] and deprive[s] it of any meaning. *** [T]hrough the guise of liberal construction, [the majority] expand[s] the taxing power of home rule units to accomplish an evasion or circumvention of limitations specifically incorporated in the Constitution following lengthy and serious debate." *Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 68-69, 432 N.E.2d 227, 238.

For the reasons stated above, I would conclude that the trial court did not abuse its discretion when it preliminarily restrained the city's enforcement of the tax pending further review, on the ground that the 1985 Chicago Amusement Tax is a service occupation tax, is not authorized as an amusement occupation tax pursuant to section 11—42—5 of the Illinois Municipal Code and therefore is contrary to article VII, section 6(e)(2), of the 1970 Illinois Constitution.

II

In order to not unduly lengthen this dissent, I do not address the equal protection arguments raised by the health clubs and considered by the majority. Instead, I consider an issue the majority neglects to note or resolve, which was presented by the health clubs and briefed by both the health clubs and the city in the instant appeal. In my view, the question is a significant one deserving of detailed consideration.

Specifically, the issue raised by the health clubs is whether the city's interpretive application of a February 1986 amendment to the 1985 Chicago Amusement Tax violates the health clubs' rights to equal protection.

On February 26, 1986, the city council of the city of Chicago approved an amendment (hereinafter 1986 amendment) to the 1985 Chicago Amusement Tax. (Journal of Proceedings of the City Council of the City of Chicago 28324 (February 26, 1986).) In pertinent part, the 1986 amendment broadens the scope of the tax by adding "social and eating clubs" to the definition of the term "amusement." (Chicago Municipal Code, ch. 104, sec. 104—1 (1986).) The 1986 amendment is the subject of challenge in an action filed against the city in the circuit court of Cook County entitled Chicago Athletic Association et al. v. City of Chicago, Docket No. 86—CH—3116. On August 22, 1986, the trial court in that action entered an agreed order, in which the court construed the legal effect of the February 1986 amendment, held that its interpretation constituted "the correct construction of the language of the Ordinance described herein," and dismissed the cause.

On the same date that the trial court entered this agreed order, the city's legal department issued a letter opinion interpreting the 1986 amendment in its application to membership in "social and eating clubs." The letter opinion states in relevant part that if the clubs' membership dues are only "incidentally" related to member use of club facilities for "athletic activities," "then no part of the

dues or fees are taxable." If the dues are composed "primarily or substantially [of charges for] the [athletic] activities or facilities provided by the club, then all dues and fees are taxable, except for additionally and separately stated dues or fees not related to any athletic activity provided." Lastly, if clubs' membership dues are composed of charges that are neither "incidentally" related to member use of facilities for "athletic activities," nor "primarily or substantially" related to use of facilities for "athletic activities," "then such dues or fees are [still] taxable, however, the club may provide for the allocation of such dues or fees between the athletic activities or facilities provided and the non-taxable services or facilities provided by or available at the club. Such an allocation must be reasonable and based on the cost of such activities, services or facilities which are reflected in the dues or fees charged."

The health clubs argue several related points with respect to the 1986 amendment to the 1985 Chicago Amusement Tax, the agreed order entered in *Chicago Athletic Association*, and the city's letter opinion of August 22, 1986. Of these, I note that the city's intended application of the 1986 amendment to social and eating clubs' "athletic activities," with the three-tiered approach stated in the city's letter opinion, does not correspond with the city's representations during appellate oral argument in the case *sub judice* to the effect that the 1985 Chicago Amusement Tax applies to that portion of membership dues relating to member use of club facilities of all "racquetball or health clubs," regardless of the clubs' distribution of member use of club facilities and receipt of club services. As a result, the city's framework may violate equal protection, since it appears that the city intends to tax membership dues in social and eating clubs in a manner different from that proposed for taxation of membership dues in racquetball or health clubs.

I also observe that the questions presented in this case, and the cause entitled *Chicago Athletic Association*, are closely interrelated. For example, one of the questions presented in the case at bar is whether the tax, by its recitation of membership in a racquetball or health club as an amusement, seeks to tax the entire amount of such membership as an amusement *per se*. In the agreed order entered in the *Chicago Athletic Association* case, the parties to that action agreed that the 1986 amendment's inclusion of membership in a social or eating club as a recreational activity "was not intended to and does not define membership in 'social or eating clubs' as entertainment or recreational activities in themselves *** but rather, the February Amendment was intended to and is merely to clarify

and describe a facility or a location at which entertainment or recreational activities may occur." The parties further agreed that the 1986 amendment "did not expand the scope of the activities which are subject to the Amusement Tax but rather was intended to be and is only descriptive of a location at which entertainment or recreational activities as defined in the [tax] may occur."

Although the agreed order recites that it has no effect upon the constitutional issues raised in the health clubs' instant appeal, the agreed order further states that the parties' stipulations constitute the correct legal interpretation of the 1986 amendment. However, the substance of the legal construction of the 1985 amendment stated in the agreed order assumes *sub silentio* a certain legal construction of the 1985 Chicago Amusement Tax, *i.e.*, that the tax's reference to membership in a racquetball or health club "was not intended to and does not define membership *** as entertainment or recreational activities in themselves *** but rather *** was intended to and is merely to clarify and describe a facility or a location at which entertainment or recreational activities may occur." (See generally *O'Connor v. A & P Enterprises, Inc.* (1980), 81 Ill. 2d 260, 271-72, 408 N.E.2d 204.) The legal interpretation to be given to the 1985 Chicago Amusement Tax's reference to membership in a health club as a recreational activity is one of the specific points raised in the case at bar. Consequently, disposition of a question considered in *Chicago Athletic Association* is pertinent to resolution of an issue presented in the instant appeal.

The majority's analysis never addresses the question of the interpretation to be given to the tax's inclusion of membership in a racquetball or health club as an "amusement." Nor does the majority consider the significance of the 1986 amendment, the agreed order in *Chicago Athletic Association*, or the city's letter opinion regarding social or eating clubs. Instead, the majority muddles the issues by holding that "health and racquetball clubs are amusements within the meaning of section 11—42—5 of the Municipal Code." (155 Ill. App. 3d at 490.) This holding is directly contradictory to the city's position in its revenue ruling, the city's representations in the case at bar, the agreed order in *Chicago Athletic Association*, and the city's letter opinion regarding social or eating clubs' "athletic activities."

In light of these considerations and given the present posture of the case, the majority is particularly remiss and especially overbroad when it determines that the 1985 Chicago Amusement Tax is "constitutional in all respects" and that trial court should have allowed

the city's motion to dismiss for failure to state a claim. In so holding, the majority effectively deprives the health clubs of any opportunity to challenge the constitutionality of the 1986 amendment in the context of their amended complaint. More importantly, the majority's decision may deprive all of the parties, in both this appeal and the *Chicago Athletic Association* case, of any meaningful appellate review of the construction and constitutionality of either the 1985 Chicago Amusement Tax or its 1986 amendment. I am unable to concur in this result. In my view, the majority should explicitly address the substance of the health clubs' claims with respect to the legal significance and effect of the 1986 amendment, the agreed order in *Chicago Athletic Association*, and the city's letter opinion. In the alternative, the majority should limit its ruling to the propriety of the trial court's allowance of the health clubs' motion for preliminary injunctive relief, so that the health clubs' amended complaint would stand, the *Chicago Athletic Association* cause could be reopened, and the cases consolidated for further proceedings upon the merits of the entire matter.

### III

I also conclude that the 1985 Chicago Amusement Tax has an impermissible extraterritorial effect in violation of article VII, section 6(a), of the 1970 Illinois Constitution.

The 1985 Chicago Amusement Tax states in pertinent part that the tax is imposed upon "the admission fees or other charges to witness, to view or to participate in [any] amusement [within the city.]" (Chicago Municipal Code, ch. 104, sec. 104—2.A (1984-85).) The tax provides that the word "amusement" means "any entertainment or recreational activities offered for public participation or on a membership or other basis including, but not limited to, *** racquetball or health clubs ***." (Chicago Municipal Code, ch. 104, sec. 104—1 (1984-85).) Thus the tax is imposed upon the purchase of any club membership whenever a club has one facility within the city of Chicago, regardless of where the membership is purchased and regardless of the fact that the membership rights may be exercised at a club facility beyond the limits of the city of Chicago. As a result, the tax appears to have an extraterritorial effect, in violation of section 6(a) of the 1970 Illinois Constitution.

The extraterritorial effect of the 1985 Chicago Amusement Tax is analogous to that found in the Chicago service-tax ordinance in *Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 432 N.E.2d 227. That ordinance imposed a tax on " 'each purchaser

who purchases service in the City \*\*\*.' [Citation.]" (*Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 51, 432 N.E.2d 227, 229.) "Under this ordinance, the tax [was] imposed if the purchaser or seller [was] in the city at the time the service [was] provided and 50% or more of the work [was] performed or 50% or more of the cost [was] incurred in the city." 89 Ill. 2d 45, 77, 432 N.E.2d 227, 242.

In determining that the Chicago service-tax ordinance had an impermissible extraterritorial effect, the Illinois Supreme Court noted that a "nonresident purchaser would be liable for the tax even though his only contact with the city might be through dealings with sellers of service 'in the city.' A nonresident purchaser could contract with a nonresident seller of service and if that seller 'substantially performs' the service in the city both are then liable for the tax on the entire transaction." (89 Ill. 2d 45, 77, 432 N.E.2d 227, 242.) As a result, the court concluded that "Chicago's imposition of tax liability or tax-collection duties upon nonresident purchasers and sellers of services performed *outside* the city is incompatible with the intent of the drafters of our constitution" because the "ordinance permits taxation upon services not rendered or performed in the territorial jurisdiction of the taxing entity." 89 Ill. 2d 45, 78, 432 N.E.2d 227, 243.

The extraterritorial effect of the 1985 Chicago Amusement Tax is similar to that of the Chicago service-tax ordinance at issue in *Commercial National Bank.* Under the 1985 Chicago Amusement Tax, a nonresident patron or member would be liable for the tax even though his only contact with the city might be his purchase of membership in a club that has one facility in the city. The nonresident patron need never utilize the club's city facility or any of the services available at that city facility. The transaction of the nonresident's purchase of membership need not even take place at the club's facility in the city. Nevertheless, the tax is imposed upon the patron's purchase of club membership, entitling the patron to an entire panoply of club services at any club location, either within or beyond the limits of the city of Chicago. As a result, "the [the 1985 Chicago Amusement Tax] purports to tax not only services performed in the city, but also services performed outside the city" (89 Ill. 2d 45, 78, 432 N.E.2d 227, 243) and has an impermissible extraterritorial effect in violation of article VII, section 6(a), of the 1970 Illinois Constitution.

In an attempt to salvage the constitutionality of the tax in this respect, the city's revenue ruling adopts the position that the tax

applies only to that prorated portion of a patron's membership dues that entitles the patron to use of a club facility within the city of Chicago. The ruling suggests that this prorated portion be measured according to the square foot percentage of a club's Chicago facilities in light of the square feet of all of the club's facilities. Chicago Department of Revenue Ruling No. 86—1, sec. 6.

The majority agrees with the city's interpretation of the tax as stated in the city's revenue ruling and concludes on this basis that the tax does not have an unauthorized extraterritorial effect. Relying upon *Forsberg v. City of Chicago* (1986), 151 Ill. App. 3d 354, 502 N.E.2d 283, 290, the majority reasons, "Suburban patrons of Chicago harbors pay the annual fee for the right to moor their boats, whether they do so or not. [Citation.] Suburban patrons of certain health clubs likewise pay for the privilege of using health clubs in the city, whether they do so or not. The city may properly tax suburban patrons for this privilege." 155 Ill. App. 3d at 495.

I am not persuaded by this reasoning. A club membership represents something wholly distinguishable from the right to use certain mooring spots. A club membership confers upon a patron numerous benefits, rights, and prerogatives. It is the club membership that grants to the patron the right to partake of all of the benefits of club membership at any club facility, including without restriction those facilities located either within or beyond the boundaries of the city of Chicago. The patron pays for this club membership, not merely for the use of certain club property within the city for his own purposes. Thus, the city's application of the tax to the square feet of a club's Chicago facilities, which the majority adopts, bears no relation to club membership at all. It is, in my view, an unsuccessful attempt to retrieve the tax from an unconstitutional extraterritorial effect.

The error in the city's analysis is even more apparent when one considers the city's extraterritoriality argument in the overall context of the city's position in the case at bar. In its revenue ruling, the city purports to separate out that portion of club membership dues that pertains to patron use of facilities, from those portions of club membership dues relating to patron receipt of club services. The city links this distinction between taxation of club facilities/club services to the clubs' square-foot percentage representing club space in the city of Chicago. The city's unstated reasoning is that the patron's use of club facilities, which the ruling states to be taxable under the tax, corresponds to the square feet of club facilities in the city which the patron is entitled to use. On the basis of this distinc-

tion, the city attempts to avoid the extraterritorial effect of the tax.

However, the city's reasoning is inconsistent. The city represented during appellate oral argument that it intends to tax only that portion of a membership dues payment that relates to the club's operating expenses for provision of club facilities for member use. If this is so, then it would follow that the operating expenses of a club's Chicago facilities would be pertinent in the city's attempt to limit the extraterritorial effect of the tax. I fail to see the relevance of square feet of Chicago club space in the context of the city's overall analysis.

For the reasons stated, I would conclude that the 1985 Chicago Amusement Tax has an impermissible extraterritorial effect, in violation of section 6(a), of the Illinois Constitution of 1970.